# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MALCOLM BLAIR BOYCE,

               Plaintiff,

       v.

JPMORGAN CHASE BANK, N.A.

              Defendant.

Case No. 1:25-cv-10131-GBD-GS

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel: 212.801.9200

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

    A.   Chase Denies Zero Point's Credit Card Application ........................................................ 3

    B.   Plaintiff Commences The *Zero Point* Action And Then Refuses To Retain Counsel........ 4

    C.   Plaintiff Commences This Action In A Transparent Attempt To Evade The Court's Orders In The *Zero Point* Action ..................................................................................... 6

    D.   Plaintiff Voluntarily Dismisses The *Zero Point* Action And Seeks to Lift The Stay Of This Action.................................................................................................................... 7

LEGAL STANDARDS ........................................................................................................... 7

ARGUMENT .......................................................................................................................... 9

I.   THE COMPLAINT CAN AND SHOULD BE DISMISSED BASED ON PLAINTIFF'S REFUSAL TO ADHERE TO THIS COURT'S PRIOR ORDERS ...................................... 9

II.  PLAINTIFF DOES NOT HAVE STANDING BECAUSE HE HAS NOT SUSTAINED A COGNIZABLE INJURY .............................................................................................. 13

III. PLAINTIFF FAILS TO STATE A BREACH OF CONTRACT CLAIM BECAUSE THERE IS NO VALID CONTRACT BETWEEN THE PARTIES.................................... 15

IV. PLAINTIFF'S CLAIM FOR "WRONGFUL DISHONOR/FAILURE TO PERFORM AFTER TENDER" IS NOT COGNIZABLE ................................................................... 17

V.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE CHASE DID NOT RECEIVE ANY BENEFIT AT PLAINTIFF'S EXPENSE AND THE PARTIES' PURPORTED RELATIONSHIP IS FAR TOO ATTENUATED ....................................... 19

VI. PLAINTIFF'S DECLARATORY JUDGEMENT CLAIM FAILS BECAUSE IT IS DUPLICATIVE OF HIS OTHER CLAIMS AND WITHOUT MERIT ............................. 20

CONCLUSION...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*ACR Sys., Inc. v. Woori Bank,*
    232 F. Supp. 3d 471 (S.D.N.Y. 2017)............................................................... 17-18

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
    671 F.3d 140 (2d Cir. 2011)..................................................................................8

*Annabi v. New York Univ.,*
    2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023)................................................ 19-20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................8

*Bay Chevrolet, Inc. v. Gen. Motors Corp.,*
    2011 WL 4628743 (E.D.N.Y. Aug. 11, 2011)......................................................11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................8

*Bell v. S. Bay Eur. Corp.,*
    486 F. Supp. 2d 257 (S.D.N.Y. 2007)...............................................................8, 9

*Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.,*
    2009 WL 362118 (S.D.N.Y. Feb. 9, 2009), *aff'd,*
    355 F. App'x 516 (2d Cir. 2009) .......................................................................20

*Caussade v. United States,*
    293 F.R.D. 625 (S.D.N.Y. 2013) .......................................................................11

*CVS Albany, LLC v. 1688 Rojav Realty, LLC,*
    2025 WL 2614077 (S.D.N.Y. Sep. 10, 2025).....................................................21

*Den Hollander v. Copacabana Nightclub,*
    624 F.3d 30 (2d Cir. 2010)....................................................................................8

*Gabayzadeh v. Taylor,*
    639 F. Supp. 2d 298 (E.D.N.Y. 2009) ..................................................................9

*Guthrie v. Rainbow Fencing, Inc.,*
    113 F.4th 300 (2d Cir. 2024) ..............................................................................13

*Hall v. Select Portfolio Servicing, Inc.,*
    2025 WL 1042339 (S.D.N.Y. Jan 14, 2025) ......................................................18

*Harty v. W. Point Realty, Inc.,*
    28 F.4th 435 (2d Cir. 2022) ........................................................................... 13-14

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ............................................................16

*Jackson v. Wells Fargo Home Mortg.*,
 2018 WL 8369422 (E.D.N.Y. Aug. 10, 2018) ....................................................17

*Jones v. Niagara Frontier Transp. Auth.*,
 722 F.2d 20 (2d Cir. 1983) .....................................................................................9

*Knox v. Ironshore Indem. Inc.*,
 2021 WL 256948 (S.D.N.Y. Jan. 26, 2021) .........................................................22

*Laydon v. Mizuho Bank, Ltd.*,
 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014), *aff'd sub nom. Laydon v.*
 *Cooperatieve Rabobank U.A.*, 51 F.4th 476 (2d Cir. 2022), *and aff'd sub nom.*
 *Laydon v. Cooperatieve Rabobank U.A.*, 55 F.4th 86 (2d Cir. 2022)..............19, 20

*Lewis v. Experian Info. Sols., Inc.*,
 2024 WL 1308705 (E.D.N.Y. Mar. 27, 2024) ....................................................15

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
 19 F.4th 58 (2d Cir. 2021) ...................................................................................14

*MAM Apparel & Textiles Ltd. v.NCL Worldwide Logistics USA, Inc.*,
 2020 WL 4336362 (E.D.N.Y. July 28, 2020) ....................................................18

*Max Impact, LLC v. Sherwood Grp., Inc.*,
 2013 WL 4451301 (S.D.N.Y. Aug. 19, 2013) ....................................................13

*Murphy v. Equifax Info.*,
 2013 WL 6562860 (E.D.N.Y. Dec. 13, 2013) ..................................................8-9

*Nasledie Davudova Express Tr. v. JP Morgan Chase Bank, Nat'l Ass'n*,
 2024 WL 4769687 (S.D.N.Y. Nov. 13, 2024) ......................................................9

*Optanix, Inc. v. Alorica Inc.*,
 2021 WL 2810060 (S.D.N.Y. July 6, 2021) ........................................................21

*Parker v. Mack*,
 460 F. App'x 62 (2d Cir. 2012) ..............................................................................9

*Pauwels v. Deloitte LLP*,
 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020) ........................................................19

*Pittman v. Chick-fil-A, Inc.*,
 2022 WL 2967586 (S.D.N.Y. July 27, 2022) ......................................................16

*Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc*,
2023 WL 7222736 (E.D.N.Y Nov. 2, 2023)....................................................15, 16

*Matter of Ramos-Meza*,
2025 WL 2773302 (S.D.N.Y. Sept. 29, 2025)......................................................15

*U.S. ex rel. Reliable Const. PM, Inc. v. Land Frog, Inc.*,
2015 WL 740034 (E.D.N.Y. Feb. 20, 2015)...................................................... 11-12

*Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*,
2023 WL 7529768 (S.D.N.Y. Nov. 13, 2023) .........................................................16

*Skyline Travel, Inc. (NJ) v. Emirates*,
2011 WL 1239783 (S.D.N.Y. Mar. 28, 2011), *aff'd*,
476 F. App'x 480 (2d Cir. 2012) ..........................................................................14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...........................................................................................13

*Sputz v. Alltran Fin. LP*,
2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) ........................................................14

*Steadman v. Citigroup Glob. Markets Holdings Inc.*,
592 F. Supp. 3d 230 (S.D.N.Y. 2022)............................................................... 12-13

*Steel River Sys., LLC v. Variant Alt. Income Fund*,
803 F.Supp.3d 290 (S.D.N.Y. 2025)....................................................................21

*Streetbrains.com, LLC v. Lyris, Inc.*,
2011 WL 1483967 (S.D.N.Y. Apr. 18, 2011)........................................... 10-11, 12

*Swan Media Grp., Inc. v. Staub*,
841 F. Supp. 2d 804 (S.D.N.Y. 2012)...................................................................15

*In re Synchrony Fin. Secs. Litig.*,
988 F.3d 157 (2d Cir. 2021).................................................................................3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...................................................................................13, 14, 15

*Twohig v. Shop-Rite Supermarkets, Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021)...................................................................19

*Villano v. Miller*,
2019 WL 4279023 (D. Conn. Sept. 9, 2019) ........................................................13

*Wellsville Manor LLC v. Great Am. Ins. Co.*,
2025 WL 2173642 (E.D.N.Y. July 31, 2025)........................................................12

*Winston & Strawn, LLP, v. Mid-Atl. Arena, LLC,*
  2021 WL 3037478 (S.D.N.Y. July 19, 2021) ........................................................20

*Winters v. Phountain PH Holdings Corp.,*
  2025 WL 814750 (E.D.N.Y. Mar. 12, 2025) ..........................................................12

*Yashar'el v. AutoNation, Inc.,*
  2025 WL 2327409 (N.D. Tex. July 30, 2025) ........................................................18

*Zeigler v. Annucci,*
  2025 WL 1056904 (S.D.N.Y. Apr. 8, 2025) ..........................................................7-8

**Rules**

Fed. R. Civ. P. 12 .........................................................................................1, 8, 13

Fed. R. Civ. P. 41 ............................................................................................ *passim*

JPMorgan Chase Bank, N.A. ("Chase") submits this memorandum of law in support of its motion to dismiss the Complaint, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 41(b) (the "Motion").

## **PRELIMINARY STATEMENT**

This action is Plaintiff's second lawsuit in which he seeks to assert baseless claims against Chase in connection with Chase's denial of a credit card application for Zero Point MGMT ("Zero Point"), a trust for which Plaintiff is the trustee. In the initial lawsuit, *Zero Point MGMT v. Chase Bank/JP Morgan Chase Co.*, No. 1:25-CV-08413 (S.D.N.Y.) (the "*Zero Point* Action"),[1] Plaintiff brought these claims on behalf of Zero Point. After Chase raised that Zero Point must be represented by counsel—not simply by Mr. Boyce, a non-lawyer—as it is an artificial entity, Plaintiff sought to side-step that prohibition by assigning Zero Point's claims on two separate occasions and even sought to substitute himself in as plaintiff in the *Zero Point* Action. The Court rejected all of these procedural machinations and repeatedly ordered Zero Point to retain counsel if it wished to proceed with its claims against Chase. Undeterred, Plaintiff devised another plan to avoid retaining counsel: he filed this case, asserting the very same claims in his own name and based on the same purported (second) assignment relied upon in the *Zero Point* Action, and then sought to voluntarily dismiss the *Zero Point* Action. This case is nothing more than a blatant attempt to end-run this Court's unambiguous orders in the *Zero Point* Action and it should be dismissed on that basis alone under Rule 41(b) of the Federal Rules of Civil Procedure. Indeed, this Court has granted multiple opportunities to retain counsel to prosecute these claims against Chase, and Plaintiff has done nothing but engage in gamesmanship in a transparent attempt to

---

[1] As reflected on the public docket, the *Zero Point* Action was timely removed from state court on October 10, 2025.

avoid doing so.  At this juncture, this Court should find Plaintiff has failed to prosecute his case consistent with this Court's orders and enter a full dismissal with prejudice.

Even if this Court were to permit Plaintiff to pursue this second lawsuit notwithstanding everything that transpired in the related *Zero Point* Action (and it should not), Plaintiff's claims can and should be dismissed on this Motion as a matter of law under Rule 12.  First and foremost, Chase's denial of Zero Point's credit card application did not result in any cognizable injury, and Plaintiff therefore lacks standing to assert any claims against Chase.  If Plaintiff did have standing (and he does not), all of his claims fail individually, too.

Plaintiff's breach of contract claim fails as a matter of law because there was never any contract between Chase and Zero Point—of course, an application for a credit card is not tantamount to any customer relationship at all—and so Chase's actions could not give rise to a breach as a matter of law.  Plaintiff's "wrongful dishonor/failure to perform after tender" claim is not a cognizable cause of action for a financial institution's denial of a credit card application. Plaintiff's unjust enrichment claim fails as a matter of law since the benefit alleged to have been conferred on Chase (the receipt and possession of Plaintiff's credit card application and supporting materials) is of no benefit to Chase whatsoever.  Moreover, the purported relationship between Plaintiff and Chase—that of a mere credit card applicant and unwitting recipient—is far too attenuated to support an unjust enrichment claim.  As for Plaintiff's declaratory judgment claim, that claim fails because it is duplicative of Plaintiff's other claims and fails on the merits for the same reasons as his other claims.

For all the reasons set forth herein, Chase respectfully requests that this Court grant the Motion in its entirety and dismiss this case with prejudice.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.     Chase Denies Zero Point's Credit Card Application

In the Complaint, Plaintiff alleges that Chase wrongfully denied a credit card application for Zero Point. According to Plaintiff, last year he "submitted a credit application seeking a $250,000 credit accommodation" for Zero Point—*i.e.*, he completed a credit card application. Compl. ¶ 8. Plaintiff alleges that, "[i]n support of the application," he "tendered a complete performance package, including the Affidavit of Trust Credit Tender and Security Interest, the Trust Collateral Addendum for Credit Application, and supporting fiduciary documentation." *Id.* ¶ 9; *see also* February 27, 2026 Declaration of Sylvia E. Simson ("Simson Decl.") ¶¶ 5-6 & Exs. 4 and 5 (documents referenced in Compl. ¶ 9, as filed by Plaintiff in the *Zero Point* Action). On August 5, 2025, Chase denied Zero Point's credit card application because of its "'entity type' restriction," *i.e.*, its restriction on providing credit cards to trusts. Compl. ¶ 11. Chase sent Plaintiff a denial letter stating as much, and specifically, that it "did not approve [Zero Point's] request" for "a new SAPPHIRE RESERVE BUSINESS Visa business card account" because Chase "do[es] not currently lend to businesses of your business/entity type." Simson Decl. ¶ 7 & Ex. 6 (denial letter referenced in Compl. ¶ 11, as filed by Plaintiff in the *Zero Point* Action).

Plaintiff further alleges that, after Chase denied the credit card application, he "issued a Reconsideration Request, a Notice of Fault and Opportunity to Cure, and an Affidavit of Final Dishonor and Enforcement," and that Chase "failed to cure or rebut any point of law or fact and

---

[2] "'[A]t the motion to dismiss stage, courts may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *In re Synchrony Fin. Secs. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021). Plaintiff previously filed all of the documents referenced in his Complaint and to which Chase cites herein on the public docket in the *Zero Point* Action. All of the rest of the documents cited are from the *Zero Point* Action case. Therefore, the Court may properly consider these documents on this Motion.

took no action to resolve or perform the obligations owed."  Compl. ¶¶ 12-13; *see also* Simson Decl. ¶¶ 8-11 & Exs. 7-10 (documents referenced in Compl. ¶ 12, as filed in the *Zero Point* Action).  As a result, Plaintiff asserts that Chase "is in final dishonor and default, having refused to perform while retaining the benefit of Plaintiff's disclosures and tender."  Compl. ¶ 14.  Plaintiff does not allege that he sent Chase any funds or property in connection with Zero Point's credit card application.  *See generally id.*

**B.     Plaintiff Commences The *Zero Point* Action And Then Refuses To Retain Counsel**

Plaintiff, as the sole trustee of Zero Point, originally asserted claims against Chase based on its denial of Zero Point's credit card application. *See generally* Simson Decl. ¶ 4 & Ex. 3 (*Zero Point* Action complaint).  Specifically, the complaint in the *Zero Point* Action alleges that Chase "failed to extend credit" after Zero Point, through Plaintiff, "submitted a credit application seeking a $250,000 credit accommodation."  *Id.* ¶¶ 5, 8.  For these alleged wrongs, Zero Point asserted claims for breach of contract, dishonor of tender, unjust enrichment, commercial dishonor and estoppel, and declaratory relief in the *Zero Point* Action.  *Id.* at 11-22.

As no attorney filed a notice of appearance for plaintiff in the *Zero Point* Action, Chase promptly brought to the Court's attention settled law that a trust, as an artificial entity, may not proceed *pro se* (and that a non-lawyer trustee like Malcolm Blair Boyce is prohibited from representing a trust in federal court).  *See* Simson Decl. ¶ 3 & Ex. 2 (Notice of Removal) at 3; Simson Decl. ¶ 12 & Ex. 11 (Chase's Oct. 20, 2025 Letter to the Court) at 1-2.  Plaintiff here (Mr. Boyce) immediately responded by purporting to assign Zero Point's claims to himself in his fiduciary capacity as trustee of Zero Point.  Simson Decl. ¶ 13 & Ex. 12 (Zero Point's Oct. 21, 2025 Response to Chase's Letter) at 2; Simson Decl. ¶ 14 & Ex. 13 (Plaintiff's Nov. 5, 2025 Letter to Court) at 1-2.  In its November 24, 2025 Opinion and Order (the "November 2025 Order"), this Court appropriately rejected this approach, including because "[t]he Second Circuit disapproved

of this very tactic" of assigning an artificial entity's claims to an individual to avoid the bar on non-lawyers representing artificial entities.  Simson Decl. ¶ 15 & Ex. 14 (November 2025 Order) at 4.  This Court ordered Zero Point to retain counsel by a date certain and permitted Chase to move to dismiss the action for failure to prosecute if Zero Point did not retain counsel by that deadline.  *Id.* at 11-12.

Notwithstanding the Court's clear instruction in its November 2025 Order, Plaintiff did not retain counsel for Zero Point.  Instead, Plaintiff sought to avoid the prohibition on Zero Point proceeding *pro se*—for a second time—and to circumvent the November 2025 Order by executing yet another assignment by which Zero Point purportedly assigned its claims against Chase to Mr. Boyce individually and then moved to substitute himself as plaintiff.  Simson Decl. ¶ 16 & Ex. 15 (Plaintiff's Motion to Substitute Plaintiff) at 1-2.  This Court rejected this effort as well in its December 5, 2025 Order (the "December 2025 Order"), finding that Zero Point could not evade the need to retain counsel by assigning its claims to Mr. Boyce, whether to him as a trustee of Zero Point or to him in his individual capacity.  Simson Decl. ¶ 17 & Ex. 16 (December 2025 Order) at 2-3.  As this Court explained:

> [W]hat was problematic was the *assignment* for the purpose of evading the requirement that the trust retain counsel. (*Id.* at 5). It does not matter whether Zero Point assigns the claim to Boyce in his individual capacity or in his fiduciary capacity. Either way, the assignment is equally 'an attempt to circumvent the bar on a non-lawyer's representation of a trust by assigning the trust's cause of action to [Boyce] himself,' in disregard for controlling Second Circuit precedent. (*Id.*); *see Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983); *Bell*, 486 F. Supp. 2d at 259-60.

*Id.* at 2 (emphasis in original).  In its December 2025 Order, this Court again ordered Zero Point to retain counsel by a date certain or "risk dismissal of its claims."  *Id.* at 4.

**C.  Plaintiff Commences This Action In A Transparent Attempt To Evade The Court's Orders In The *Zero Point* Action**

In a desperate attempt to evade the requirement that Zero Point retain counsel, Plaintiff then commenced a brand new lawsuit in this Court (*i.e.*, this case) asserting the very same claims as Zero Point—this time, in his own name as the purported assignee of Zero Point's claims. Plaintiff did so even though this Court had just found in the *Zero Point* Action that the assignment was an improper attempt to avoid the requirement that Zero Point retain counsel to proceed. Indeed, the Complaint in this case makes clear that Plaintiff commenced this action against Chase solely as an "assignee and current owner of the claim originally held by Zero Point []" and to which Plaintiff "acquired all rights, title, and interest . . . through a written assignment executed on November 26, 2025." Compl. ¶ 6; *see also* Simson Decl. ¶ 16 & Ex. 15 at 5-6 (purported assignment, referenced in Compl. ¶ 6, by which Plaintiff assigned "[a]ll right, title, and interest in the cause of action asserted in *Zero Point MGMT v. JPMorgan Chase Bank, N.A.*, Case No. 1:25-cv-08413" to himself individually).

In his Complaint for this action, just as in the pleading in the *Zero Point* Action, Plaintiff alleges that Chase wrongfully denied Zero Point's "credit application seeking a $250,000 credit accommodation." Compl. ¶ 8. Plaintiff similarly asserts claims against Chase for breach of contract, "wrongful dishonor/failure to perform after tender," unjust enrichment, and declaratory judgement. *Id.* ¶¶ 15-28. Moreover, again, Plaintiff demands "[e]nforcement of the $250,000 credit accommodation," "[d]amages in an amount to be determined at trial," and "[d]eclaratory judgment affirming Plaintiff's tender and enforcement rights," among other relief. *Id.* § V.

Shortly after this action was commenced, this Court stayed it "pending a determination of whether the [*Zero Point* Action] will proceed" as it appeared "to be duplicative of the [*Zero Point*

Action] and to be another impermissible attempt to circumvent the ruling barring a non-lawyer from representing an artificial entity in federal court." Dkt. No. 14.

## D. Plaintiff Voluntarily Dismisses The *Zero Point* Action And Seeks to Lift The Stay Of This Action

At the time this Court stayed this action, Plaintiff had already exhausted his procedural maneuvers in the *Zero Point* Action to avoid having to retain counsel. So rather than retain counsel in the *Zero Point* Action, he notified the Court that Zero Point "will not be retaining counsel to proceed further in the" *Zero Point* Action. Simson Decl. ¶ 18 & Ex. 17 (Notice Regarding Proceeding Without Counsel) at 1. Plaintiff then voluntarily dismissed the *Zero Point* Action on December 23, 2025. Simson Decl. ¶ 19 & Ex. 18 (Notice of Voluntary Dismissal). Plaintiff next requested that the stay in the instant action be lifted because "the predicate basis for stay [i.e., the *Zero Point* Action] no longer exists" since the Zero Point Action "has now been voluntarily dismissed and will not proceed." Dkt. No. 16. This Court subsequently ordered Chase to submit a letter explaining whether it intends to move to dismiss, and, if so, on what grounds. Dkt. No. 18. Chase submitted such a letter, Dkt. No. 20, and the Court granted Chase leave to move to dismiss this case, Dkt. No. 22. This Motion follows.

## LEGAL STANDARDS[3]

Under Rule 41 of the Federal Rules of Civil Procedure, a court may dismiss an action "if the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Although dismissal is a "harsh remedy," "the Second Circuit has . . . emphasized that the authority to invoke dismissal . . . is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Zeigler v. Annucci*,

---

[3] Unless otherwise indicated, emphasis has been added to quotations, and internal citations, quotations, brackets, ellipses, and footnotes have been omitted.

2025 WL 1056904, at *2 (S.D.N.Y. Apr. 8, 2025). Thus, "courts in this district have recognized that even pro se litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the Court gives warning." *Id.*

With respect to Fed. R. Civ. P. 12(b)(1), it is well-settled that a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (affirming dismissal for lack of subject matter jurisdiction because plaintiff "failed to allege a plausible injury in fact"). A failure to do so will result in dismissal under Rule 12(b)(1).

Moreover, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" and be thus "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). It thus must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint offering only "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not plausibly allege a claim for relief. *Id.* at 678. Indeed, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully," and so "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility" and must be dismissed. *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010).

*Pro se* litigants, like all plaintiffs, "must plead adequate facts to satisfy the standards of Federal Rule of Civil Procedure 8, *Iqbal*, and *Twombly*." *Murphy v. Equifax Info.*, 2013 WL 6562860, at **2-3 (E.D.N.Y. Dec. 13, 2013) (dismissing complaint by *pro se* plaintiff that

"provides minimal facts detailing how Defendants' violated his rights [and] cites no case law");
*see also, e.g.*, *Parker v. Mack*, 460 F. App'x 62 (2d Cir. 2012) (affirming dismissal with prejudice, explaining that "even a pro se complaint, when liberally construed, must satisfy the pleading standards set forth in [*Iqbal* and *Twombly*]").

As set forth in detail below, Plaintiff's claims should be dismissed under each of these rules.

**ARGUMENT**

I. **THE COMPLAINT CAN AND SHOULD BE DISMISSED BASED ON PLAINTIFF'S REFUSAL TO ADHERE TO THIS COURT'S PRIOR ORDERS**

It is well-settled that *pro se*, non-lawyer plaintiffs may not represent a trust or any other artificial entity. *See, e.g., Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 301 (E.D.N.Y. 2009) (explaining that a "pro se plaintiff is not permitted to bring this action . . . on behalf of the Trusts she purports to represent" and collecting cases for this proposition across the federal circuits); *Bell v. S. Bay Eur. Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007) ("A trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust."); *Nasledie Davudova Express Tr. v. JP Morgan Chase Bank, Nat'l Ass'n*, 2024 WL 4769687, at *2 (S.D.N.Y. Nov. 13, 2024) ("[A] nonlawyer trustee cannot bring claims on behalf of a trust."). It is similarly well-settled that a plaintiff cannot evade this well-established prohibition by assigning claims from an artificial entity to an individual. *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) (affirming dismissal of claims assigned from corporation to individual and noting that "federal courts have . . . disapproved any circumvention of the rule by the procedural device of an assignment of the corporation's claims to the lay individual"). This prohibition applies to trusts with equal force. *See Bell*, 486 F. Supp. 2d at 259. ("The rule in *Jones* that the bar on a non-lawyer's representation of the artificial entity may

not be circumvented by assignment to a natural person ought to apply with equal force to an assignment by a trust.").

Against this backdrop, there can be no dispute that Plaintiff seeks to assert claims against Chase that he caused Zero Point to assign to himself. Zero Point was also barred from prosecuting these very same claims against Chase *pro se*, and Plaintiff cannot avoid that plain and well-recognized bar by assigning the claims to himself and commencing a new action in his own name as assignee of Zero Point's claims. Indeed, this Court has already found, on two separate occasions, that the assignments of Zero Point's claims to Plaintiff were an improper attempt to avoid the requirement that Zero Point retain counsel and that Plaintiff could not prosecute Zero Point's claims as an assignee of them. *See* Simson Decl. ¶ 15 & Ex. 14 (November 2025 Order) at 4-5; Simson Decl. ¶ 17 & Ex. 16 (December 2025 Order) at 2-3. As this Court previously observed, "the law of this Circuit makes clear that the rule against a non-lawyer representing an artificial entity may not be circumvented through the expedient of an assignment of the cause of action from the entity to that individual non-lawyer." Simson Decl. ¶ 15 & Ex. 14 (November 2025 Order) at 10. Here, all of Plaintiff's claims were assigned to him by Zero Point in a transparent attempt to circumvent this Court's prior orders.

Against this backdrop, this Court can and should exercise its discretion to dismiss this lawsuit pursuant to Rule 41(b). When evaluating a motion to dismiss pursuant to this rule, the court is to examine and balance the following:

> (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Streetbrains.com, LLC v. Lyris, Inc.*, 2011 WL 1483967, at *1 (S.D.N.Y. Apr. 18, 2011) (granting motion to dismiss for failure to prosecute where corporation failed to retain counsel).[4] Dismissal of the Complaint is appropriate here, both because Plaintiff (1) failed to properly prosecute the claims at issue by refusing to retain counsel and (2) failed to comply with several court orders requiring the retention of counsel notwithstanding the claim assignments.

This Court first ordered the retention of counsel on November 24, 2025 and then did so for a second time on December 5, 2025. *See supra* at 4-5. Each time, the Court found that Plaintiff could not avoid the need to retain counsel by assigning Zero Point's claims to himself and warned Plaintiff that failure to retain counsel could result in dismissal. *See* Simson Decl. ¶ 15 & Ex. 14 (November 2025 Order) at 11-12 ("If a notice of appearance by such an attorney is not filed by January 9, 2026, Chase may file a motion to dismiss for failure to prosecute."); Simson Decl. ¶ 17 & Ex. 16 (December 2025 Order) at 4 ("Plaintiff must notify the Court as to whether it has retained counsel by no later than January 9, 2026, or risk dismissal of its claims."). There can be no doubt that Plaintiff has had ample opportunity to retain counsel and was well aware that his failure to do so would result in dismissal.

The remaining factors under the Rule 41(b) balancing test also militate in favor of a Rule 41(b) dismissal. Absent dismissal, Defendants will be prejudiced as a result of Plaintiff's failure to properly prosecute the claims asserted through counsel.[5] Along similar lines, "plaintiff's failure to obtain counsel means that [] neither party can advance the case," thus needlessly congesting the court's docket, and rendering "no feasible alternative to dismissal." *U.S. ex rel. Reliable Const.*

---

[4] *See also Caussade v. United States*, 293 F.R.D. 625, 629 (S.D.N.Y. 2013) (detailing the "five factors that [the Second Circuit] uses to review whether a court has properly dismissed a case for failure to prosecute").

[5] *See Bay Chevrolet, Inc. v. Gen. Motors Corp.*, 2011 WL 4628743, at *2 (E.D.N.Y. Aug. 11, 2011), *report and recommendation adopted*, 2011 WL 4628713 (E.D.N.Y. Oct. 3, 2011) ("Because a plaintiff has a duty of due diligence to move its case forward, and plaintiff has failed to do so, as evidenced by its inability to retain counsel, prejudice to the defendants may be presumed.").

*PM, Inc. v. Land Frog, Inc.*, 2015 WL 740034, at *3 (E.D.N.Y. Feb. 20, 2015) (recommending dismissal absent appearance by counsel).

Courts in this Circuit routinely find that the Rule 41(b) factors favor dismissal in circumstances similar to those here. For example, in *Streetbrains.com*, the court, as it did here, "informed [plaintiff's non-lawyer representative] that an [artificial entity] could not appear *pro se* in an action in federal court" and "instructed [him] that if [the plaintiff entity] did not obtain [] counsel, the action would be dismissed for failure to prosecute." 2011 WL 1483967, at *1. The plaintiff's representative, like Mr. Boyce here, informed the court that "he had no intention of hiring [] counsel" and "failed to retain [] counsel." *Id.* On these facts, the Court dismissed the action with prejudice pursuant to Rule 41(b) because the plaintiff's "refusal to hire [] counsel represents a complete abdication of any intention to further prosecute the instant action." *Id.*

A court in the Eastern District of New York recently took the same approach when dismissing an action with similar facts. In *Wellsville Manor LLC v. Great Am. Ins. Co.*, the court considered a situation in which a plaintiff "failed to retain counsel pursuant to [a court order]" even though it was "informed . . . that a corporation can only appear in court through an attorney, and may not proceed pro se." 2025 WL 2173642, at *4 (E.D.N.Y. July 31, 2025). The Court granted the defendant's motion to dismiss pursuant to Rule 41(b) since plaintiff "failed to prosecute its case." *Id.* In granting the motion to dismiss, the court also observed, as is the case here, that plaintiff "has not requested additional time to obtain counsel" or "notified the Court of any attempts to obtain counsel." *Id.* Similar other cases abound. *See, e.g., Winters v. Phountain PH Holdings Corp.*, 2025 WL 814750, at *5 (E.D.N.Y. Mar. 12, 2025) (dismissing counterclaims under Rule 41(b) where corporation "has failed to comply with court orders in retaining counsel" after being "informed that a corporate entity cannot appear pro se"); *Steadman v. Citigroup Glob.*

*Markets Holdings Inc.*, 592 F. Supp. 3d 230, 240 (S.D.N.Y. 2022) ("Where, as here, a plaintiff corporation has been repeatedly warned that its claim will be dismissed absent retention of counsel, and it has failed to appear through counsel, dismissal is appropriate.").[6] This Court can and should reach the same result as these cases and dismiss this case pursuant to Rule 41(b).

## II.    PLAINTIFF DOES NOT HAVE STANDING BECAUSE HE HAS NOT SUSTAINED A COGNIZABLE INJURY

Plaintiff fails to allege any cognizable injury that would provide him with standing to assert any claims.  Necessarily, even if this Court were to permit him to assert his claims without legal representation (and it should not), this Motion should still be granted under Rule 12(b)(1) for lack of Article III standing to pursue a claim in this Court.

In order to have standing to sue and survive a Rule 12(b)(1) motion to dismiss, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The Supreme Court recently clarified the standard to be applied in evaluating the first of three requisite elements for standing, reducing "injury in fact" to a simple formula: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  Since *TransUnion*, the Second Circuit has repeatedly emphasized the importance of this decision and dismissed complaints that fail to plausibly allege a concrete harm. *See, e.g.*, *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 305, 311 (2d Cir. 2024) (finding *TransUnion* "clarified the appropriate standard" and that "[w]ithout plausible allegations that [plaintiff] suffered a concrete injury," the complaint must be dismissed); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435,

---

[6] *See also Villano v. Miller*, 2019 WL 4279023, at *2 (D. Conn. Sept. 9, 2019) (dismissing claims brought by entities after the court informed the non-lawyer representative of the entities, in connection with two prior actions, "that an artificial entity cannot proceed *pro se* and any person who represents an entity must be an attorney licensed to practice law before our courts"); *Max Impact, LLC v. Sherwood Grp., Inc.*, 2013 WL 4451301, at *1 (S.D.N.Y. Aug. 19, 2013) (adopting recommendation to dismiss claims "for failure to prosecute" "[b]ecause [plaintiffs] cannot prosecute this action *pro se* and have not retained new counsel within the time allotted.").

440, 444 (2d Cir. 2022) (noting that *TransUnion* now makes [the standard] clear" and dismissing complaint as plaintiff "has not alleged a concrete injury"); *Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 65-66 (2d Cir. 2021) (dismissing complaint as plaintiffs failed to plead enough facts to make plausible that they suffered a concrete harm).

Plaintiff notably does not allege *any* injury, much less a concrete injury, whether to Zero Point or to himself. *See TransUnion*, 594 U.S. at 424 (the concreteness "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury"); *Sputz v. Alltran Fin., LP*, 2021 WL 5772033, at *3 (S.D.N.Y. Dec. 5, 2021) ("*TransUnion* and cases decided since" require plaintiff to identify an "analogous common-law or historical harm" for its asserted injury). This failure alone requires dismissal under *TransUnion* and its progeny. Although not alleged, the only discernable injury Zero Point could have possibly sustained is the denial of a credit card application (and necessarily, not receiving the "accommodation" it sought to obtain from Chase). This would be woefully insufficient as Zero Point has no legally protected interest in obtaining a credit card. Financial institutions are not obligated to provide a credit card to every prospective customer who applies for one and thus an institution's decision to deny a credit card application does not result in a cognizable injury. *Cf. Skyline Travel, Inc. (NJ) v. Emirates*, 2011 WL 1239783, at *2 (S.D.N.Y. Mar. 28, 2011), *aff'd*, 476 F. App'x 480 (2d Cir. 2012) ("[I]t generally has been held that fundamental assumptions in free business enterprise, including the belief that each business enterprise must be free to select its business relations in its own interest, may justify or excuse the act of one who causes harm to another as a collateral consequence of his refusal to continue a business relation terminable at will[.]").

Plaintiff has no other conceivable grounds on which he could establish standing to sue for Chase's denial of a credit card application. To the extent Plaintiff is dissatisfied and frustrated

14

with Chase because of its denial of Zero Point's credit card application and seeks to bring a claim on that basis, that is not a cognizable injury that would establish standing. *See, e.g., Lewis v. Experian Info. Sols., Inc*., 2024 WL 1308705, at *4-5 (E.D.N.Y. Mar. 27, 2024) (explaining that a "a plaintiff must show [] that he suffered an injury in fact that is concrete, particularized, and actual or imminent" in order to establish standing, and finding that allegations that "frustration, embarrassment, and humiliation" resulting from a denial of "credit related and loan products" are insufficient to make that showing); *Matter of Ramos-Meza*, 2025 WL 2773302, at *4 (S.D.N.Y. Sept. 29, 2025) ("Relying on *TransUnion* and its progeny, the Bankruptcy Court therefore correctly found that Plaintiff's pleaded injuries of difficulty and wasted time stemming from Chase's suspension of online bill-pay, standing alone, did not amount to 'concrete' injuries for Article III standing purposes."). Courts in this Circuit routinely dismiss claims predicated solely on such sentiments and this Court should do the same.

## III. PLAINTIFF FAILS TO STATE A BREACH OF CONTRACT CLAIM BECAUSE THERE IS NO VALID CONTRACT BETWEEN THE PARTIES

Plaintiff asserts a breach of contract claim but that claim fails for the simple reason that there is no contract between Plaintiff and Chase that could have been breached. And even if there were such a contract (there is not), Plaintiff fails to establish the required elements of this claim.

"Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012). With respect to the first prong, it is black-letter law that "there can be no alleged breach" of a contract "without a contractual relationship" and that any claim for a breach of contract fails where "Plaintiff makes no factual allegations that support a finding of a contractual agreement." *Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc*, 2023 WL 7222736, at *7

(E.D.N.Y. Nov. 2, 2023). Moreover, a plaintiff fails to plead a breach of contract claim under New York law where it "does not present, in a nonconclusory fashion, the specific terms of any purported agreement between" it and the defendant. *Pittman v. Chick-fil-A, Inc.*, 2022 WL 2967586, at *6 (S.D.N.Y. July 27, 2022); *see also Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) ("A breach of contract claim will be dismissed [] as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties purported contract, including the specific provisions of the contract upon which liability is predicated.").

Here, Plaintiff fails to plausibly allege any contract between Plaintiff and Chase—much less identify the terms of a contract that Chase supposedly breached—because there is none. Plaintiff asserts that Chase "wrongfully refused to honor the **application,** failed to respond to the **tender**, and failed to cure upon **notice**." Compl. ¶ 17. Nowhere, however, does Plaintiff allege the existence of a **contract** that actually binds Chase. Indeed, an "application," a "tender," or a "notice" are not contracts that bind Chase in any way. *See, e.g., Radar Sports,* 2022 WL 7222736, at *6 (finding submission of an application to join a sports tournament did not amount to the formation of a contract). For this reason alone, Plaintiff's contract-based claim fails.

Plaintiff also avers that he "tendered full performance and satisfied all conditions necessary to create a binding obligation." Compl. ¶ 16. But Plaintiff does not allege any instrument or basis for the creation of a binding obligation. To the extent that Plaintiff argues that his submission of a credit card application is somehow sufficient to create a binding obligation, such an argument is without merit and must be rejected. *See Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*, 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023) ("A loan application and discussions with a lender . . . are insufficient to give rise to a valid and binding contract, express or implied."); *see*

*also Jackson v. Wells Fargo Home Mortg.*, 2018 WL 8369422, at *11 (E.D.N.Y. Aug. 10, 2018), *report and recommendation adopted*, 2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019), *aff'd*, 811 F. App'x 27 (2d Cir. 2020) ("Applications for loans thus do not create binding agreements.").

Even if the submission of a credit card application somehow created binding obligations on the part of Chase (and it did not), Plaintiff's claim for breach of contract would still fail because he does not plausibly allege any of the other elements for such a claim. In particular, Plaintiff fails to identify Chase's obligation that it did not perform and fails to allege that Chase's denial of Zero Point's credit card application resulted in any cognizable injury to Zero Point since Zero Point has no legal entitlement to a credit card. *See supra* at Part II.

## IV. PLAINTIFF'S CLAIM FOR "WRONGFUL DISHONOR/FAILURE TO PERFORM AFTER TENDER" IS NOT COGNIZABLE

Plaintiff's cause of action for "wrongful dishonor/failure to perform after tender" is inapplicable, unsupported, and should be dismissed. Plaintiff appears to be relying on legal principles and provisions of the Uniform Commercial Code ("UCC") that govern certain financial instruments that are not at issue in this case and attempting to apply those principles to this matter. Yet these principles do not so apply, such that this cause of action can and should be dismissed.

The New York UCC, for example, provides remedies if an "issuer wrongfully dishonors or repudiates its obligation to pay money under *a letter of credit*." N.Y. U.C.C. § 5-111. It also provides that "a payor bank is liable . . . for damages proximately caused by the wrongful dishonor of an *item*." N.Y. U.C.C. § 4-402. In this context, an "item" is "an instrument for the payment of money even though it is not negotiable but does not include money." N.Y. U.C.C. § 4-104.

These provisions apply to certain financial instruments, like letters of credit, for which banks may have obligations upon the presentment of certain required documents. For example, as the court in *ACR Sys., Inc. v. Woori Bank* explained, "[t]o prevail on a claim for wrongful dishonor

of a letter of credit, a plaintiff must demonstrate: (1) that there exists a letter of credit issued by the defendant for the benefit of the plaintiff; (2) that the plaintiff timely presented conforming documents to the defendant as required by the letter of credit; and (3) that the defendant failed to pay the plaintiff on the letter of credit." 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017). In this context, a "bank has a ministerial role" "[i]n reviewing a plaintiff's submission of documents" "that imparts no obligation to go beyond the face of documents." *MAM Apparel & Textiles Ltd. v. NCL Worldwide Logistics USA, Inc.*, 2020 WL 4336362, at *3 (E.D.N.Y. July 28, 2020). Thus, a financial institution's failure to honor a letter of credit upon the presentment of the requisite documentation may result in liability.

These provisions do not apply to credit card applications, however, and Plaintiff does not—and cannot—point to any basis in the New York UCC or elsewhere that would support a dishonor claim based on the denial of a credit card application. An applicant for a credit card has no entitlement to a credit card upon presentment of a credit card application, and the denial of a credit card does not give rise to a claim for dishonor. Plaintiff's claim for "wrongful dishonor" and "failure to perform after tender" are simply not cognizable here and must be dismissed. *See Yashar'el v. AutoNation, Inc.*, 2025 WL 2327409, at *1 (N.D. Tex. July 30, 2025) (dismissing "commercial dishonor" claim under the UCC because, "[e]ven [if] liberally construed, a review of [the] Complaint reveals a failure to state or suggest a cognizable claim" and includes "allegations that have no basis in law."); *see also Hall v. Select Portfolio Servicing, Inc.*, 2025 WL 1042339, at *8 (S.D.N.Y. Jan 14, 2025) (finding that the "purported 'dishonor' is not a cognizable claim under the UCC").[7]

---

[7] Moreover, Plaintiff's count for "wrongful dishonor/failure to perform after tender" is predicated on Chase's purported "fail[ure] to acknowledge, process, or respond to" Plaintiff's outreach as to his (denied) credit card application. Compl. ¶¶ 20-21. These allegations are simply insufficient to support any plausible claim, no matter how Plaintiff styles the cause of action.

## V.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE CHASE DID NOT RECEIVE ANY BENEFIT AT PLAINTIFF'S EXPENSE AND THE PARTIES' PURPORTED RELATIONSHIP IS FAR TOO ATTENUATED

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167–68 (S.D.N.Y. 2021).  In order to state a claim for unjust enrichment, however, a plaintiff must sufficiently allege a "specific or direct benefit that [a defendant] actually received." *Pauwels v. Deloitte LLP*, 2020 WL 818742, at *15 (S.D.N.Y. Feb. 19, 2020) (dismissing unjust enrichment claim because allegations that defendant did not make full payments were insufficient to make the required "showing of a "specific' or 'or direct' benefit that defendant 'actually received'").  A claim for unjust enrichment also "requires some type of direct dealing or actual, substantive relationship with a Defendant." *Laydon v. Mizuho Bank, Ltd.*, 2014 WL 1280464, at *13 (S.D.N.Y. Mar. 28, 2014) (Daniels, J.), *aff'd sub nom. Laydon v. Cooperatieve Rabobank U.A.*, 51 F.4th 476 (2d Cir. 2022), *and aff'd sub nom. Laydon v. Cooperatieve Rabobank U.A.*, 55 F.4th 86 (2d Cir. 2022).

First and foremost, Plaintiff's claim for unjust enrichment fails because Chase received no benefit from Zero Point.  While Plaintiff contends that Chase received and possessed Zero Point's credit card application and supporting materials, *see* Compl. ¶ 24, Plaintiff fails to allege—much less plausibly so—how a specific and direct benefit could possibly inure to Chase as a result of this credit card application and supporting materials.  Chase indisputably denied the application, and Plaintiff publicly filed at least a portion of his supporting materials for the application on a public docket.  *See* Simson Decl. ¶¶ 5-6 & Exs. 4-5.  As Chase received no benefit based solely on this denied application, any claim for unjust enrichment fails as a matter of law.  *See Annabi v. New York Univ.*, 2023 WL 6393422, at *14 (S.D.N.Y. Sept. 29, 2023) (dismissing unjust

enrichment claim based on submission of contest application because there was "no enrichment giving rise to a claim for unjust enrichment"); *Laydon*, 2014 WL 1280464, at *14 (dismissing unjust enrichment claim "[b]ecause Plaintiff does not allege . . . how Defendants benefitted at Plaintiff's expense"); *Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 2009 WL 362118, at *8 (S.D.N.Y. Feb. 9, 2009) (Daniels, J.), *aff'd*, 355 F. App'x 516 (2d Cir. 2009) (dismissing unjust enrichment claim where "[t]he complaint [was] devoid of allegations showing that plaintiff suffered any identifiable losses or that plaintiff provided any money, property or services to defendant for which, in equity, plaintiff should receive restitution").

In addition, Plaintiff's claim for unjust enrichment fails because there was no relationship between Chase and Plaintiff that could have caused any reliance or inducement, as required by New York law in order to state a claim for unjust enrichment, since the extent of the parties' interaction is Plaintiff's submission of a credit card application. *See, e.g.*, *Winston & Strawn LLP v. Mid-Atl. Arena, LLC*, 2021 WL 3037478, at *8 (S.D.N.Y. July 19, 2021) (noting that unjust enrichment "will not be supported unless there is a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part" and dismissing unjust enrichment claim because defendant had not "induced to confer a benefit" on plaintiff); *see also Laydon*, 2014 WL 1280464, at *14 (dismissing unjust enrichment claim "[b]ecause Plaintiff does not allege any relationship between himself and any of the Defendants"). The unjust enrichment thus fails as a matter of law, too.

## VI. PLAINTIFF'S DECLARATORY JUDGEMENT CLAIM FAILS BECAUSE IT IS DUPLICATIVE OF HIS OTHER CLAIMS AND WITHOUT MERIT

Plaintiff's request for declaratory judgment should be dismissed, too, because it is duplicative of his other causes of action and meritless in any event.

As an initial matter, courts routinely dismiss declaratory judgment claims where they are duplicative of other claims asserted by the plaintiff. *See, e.g., CVS Albany, LLC v. 1688 Rojav Realty, LLC*, 2025 WL 2614077, at *3 (S.D.N.Y. Sep. 10, 2025) (dismissing declaratory judgment claim where relief would not "serve a distinct and useful purpose from the breach of contract claim"); *Steel River Sys., LLC v. Variant Alt. Income Fund*, 803 F.Supp.3d 290, 311-12 (S.D.N.Y. 2025) (dismissing declaratory judgment claim that was duplicative of claim brought under N.Y. U.C.C. § 9-625(a)); *Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *3-4 (S.D.N.Y. July 6, 2021) (dismissing declaratory judgment claim as duplicative of breach of contract claim).

Here, Plaintiff seeks a declaration "affirming that . . . Plaintiff's tender constituted valid performance" and that Chase's "refusal to honor the credit accommodation constituted breach and dishonor." Compl. ¶ 28. These requested declarations are co-extensive with Plaintiff's other claims, and any relief provided in connection with those claims would render any declarations superfluous. Plaintiff seeks nothing more than determinations that Chase breached a contract and engaged in "dishonor," which are determinations that will necessarily be made in connection with Plaintiff's first two causes of action. Likewise, Plaintiff's request for a declaration that "Plaintiff is entitled to enforcement and judicial remedy," *id.*, is coterminous with determinations that would necessarily be made by the Court with respect to these same causes of action as well.

Moreover, Plaintiff's request for declaratory relief should be dismissed because it fails on the merits. Plaintiff's request for a declaration that Chase's "refusal to honor the credit accommodation constituted breach," *id.*, necessarily fails because there was no contract between Chase and Plaintiff, and Chase was not otherwise bound by any obligation to Plaintiff. *See supra* at Part III. Similarly, Plaintiff's request for a declaration that Chase's conduct

"constituted . . . dishonor," Compl. ¶ 28, fails because dishonor is not a cognizable claim for a financial institution's denial of a credit card application. *See supra* at Part IV.

In sum, Plaintiff's declaratory judgment cause of action must be dismissed since "[t]he Declaratory Judgment Act is procedural only and does not create an independent cause of action," and Plaintiff cannot use it "to create legal rights that do not otherwise exist." *Knox v. Ironshore Indem. Inc.*, 2021 WL 256948, at *4 (S.D.N.Y. Jan. 26, 2021) (dismissing claim under Declaratory Judgment Act). Since Plaintiff's substantive claims fail and he cannot "circumvent the requirements of [his claims] simply by styling [his] claim as one for a declaratory judgment.," *id.*, Plaintiff's declaratory relief claim fails as well.

## **CONCLUSION**

For all these reasons, the Court should grant the Motion in its entirety and dismiss this action with prejudice.

Dated: February 27, 2026
      New York, New York

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:

_____*/s/ Sylvia E. Simson*_____
    Sylvia E. Simson
    John C. Molluzzo Jr.

One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9200
Sylvia.Simson@gtlaw.com
MolluzzoJ@gtlaw.com

Michael V. Pucci
333 S.E. 2nd Avenue
Suite 4400
Miami, Florida 33131
Tel: (305) 579-0648
Michael.Pucci@gtlaw.com

*Counsel for Defendant*
*JPMorgan Chase Bank, N.A.*