**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
MALCOLM BLAIR BOYCE,

Plaintiff,

-against-

JP MORGAN CHASE BANK, N.A.,

Defendant.
---------------------------------------------------------------------X

**25 Civ. 10131 (GBD) (GS)**

**REPORT & RECOMMENDATION**

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Malcolm Boyce ("Boyce" or "Plaintiff"), proceeding *pro se* and as assignee of claims originally held by a trust, commenced this action on December 5, 2025 against JP Morgan Chase Bank, N.A., ("Chase" or "Defendant") seeking relief related to a denied credit card application. Chase has moved to dismiss the action pursuant to Rules 12(b)(1), 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure. (Dkt. No. 25). For the reasons stated below, this Court recommends that Chase's motion be **GRANTED**.[1]

## BACKGROUND

This dispute arises from the denial of a credit application submitted by Zero Point MGMT ("Zero Point"), a trust, to Chase in April 2025. Before Plaintiff filed this case, Zero Point, acting through Plaintiff, its trustee, asserted substantially identical claims in an action that was thereafter voluntarily discontinued. (*See generally Zero Point MGMT. v. Chase Bank/JP Morgan Chase Co.*, No. 25 Civ. 8413

---

[1] On June 17, 2026, the Honorable George B. Daniels referred Chase's motion to dismiss to the undersigned for a report and recommendation. (Dkt. No. 31).

(GBD) (GS) (S.D.N.Y.) (the "Zero Point Action")). What happened in that prior action, and how it evolved into the current case, is critical to an assessment of certain issues raised by Chase's motion. The Court thus begins by describing the Zero Point Action.

**A. The Zero Point Action**

On September 21, 2025, Zero Point commenced the Zero Point Action in New York Supreme Court, New York County. The case was removed to this Court by Chase, on the basis of diversity of citizenship, on October 10, 2025. (Zero Point Action, Dkt. No. 1). The case was assigned to the Honorable George B. Daniels, who subsequently referred it to the undersigned for general pretrial supervision. (Zero Point Action, Dkt. No. 9).

Zero Point's complaint alleged that Chase wrongly denied an application submitted by Zero Point "seeking a $250,000 credit accommodation." (Zero Point Action, Dkt. No. 1-1 ¶¶ 5–10 & Ex. B (affidavit of trust credit tender and security interest)). Based on Chase's letter denying the application, which was attached to Zero Point's complaint, the application was for a Chase Sapphire Reserve Business Visa business card account. (*Id.* Ex. D). Zero Point asserted causes of action for breach of contract/dishonor of tender, unjust enrichment, commercial dishonor and estoppel, and declaratory relief. (*Id.* ¶¶ 11–22).

The complaint identified Zero Point as "a private irrevocable trust organized under the laws of the State of New York," and Boyce as its "duly appointed Trustee." (*Id.* ¶ 3). The complaint was verified and signed by Boyce on Zero Point's

behalf. (*Id.* at 5). However, Boyce is not an attorney, and no attorney appeared for Zero Point before the state court or this Court in the Zero Point Action.

**1. The November 2025 Order**

On October 20, 2025, Chase submitted a letter to Judge Daniels contending that, as an artificial entity, Zero Point was not permitted to proceed *pro se* and that Boyce, as a nonlawyer trustee, was not permitted to represent it in federal court. (Zero Point Action, Dkt. No. 7). Chase sought guidance regarding this issue, including a request to "provide Plaintiff a deadline by which to secure counsel or risk dismissal." (*Id.* at 2).

That same day, Boyce filed a document notifying the Court that Zero Point had assigned the claims at issue to Boyce in his capacity as a trustee and attaching the assignment itself, dated October 20, 2025. (Zero Point Action, Dkt. No. 8). Boyce also submitted a letter arguing that, in light of this assignment, "[t]he Trust itself is . . . not appearing pro se" and hence "no unauthorized representation exists." (Zero Point Action, Dkt. No. 11 at 2). Next, Boyce submitted another letter attaching an Amendment to the Declaration of Trust, dated October 11, 2025, indicating that Boyce was "the sole trustee and sole beneficiary of Zero Point MGMT." (Zero Point Action, Dkt. No. 16 at 3). That fact, Boyce claimed, cured any unauthorized representation issues because "no distinct interests [were] represented." (*Id.*).

After receiving additional submissions from the parties (Zero Point Action, Dkt. Nos. 18 & 19), the Court issued an Opinion & Order on November 24, 2025.

(Zero Point Action, Dkt. No. 20 ("November 2025 Order")). That Order noted that the rule prohibiting corporations and other artificial entities from appearing *pro se* in federal court actions applies equally to trusts. (*Id.* at 3–4 (citing, *inter alia*, *Nasledie Davudova Express Tr. v. JP Morgan Chase Bank*, No. 24 Civ. 7633 (LTS), 2024 WL 4769687, at *2 (S.D.N.Y. Nov. 13, 2024) ("[A] nonlawyer trustee cannot bring claims on behalf of a trust.")). The Court found that "Boyce's attempt to circumvent the bar on a non-lawyer's representation of a trust" via the assignment "must fail" under Second Circuit precedent "disapprov[ing] of this very tactic." (*Id.* at 4–5 (citing *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983)); *see also id.* at 5 (citing *Bell v. S. Bay Eur. Corp.*, 486 F. Supp. 2d 257, 259–60 (S.D.N.Y. 2007) (holding that the rule in *Jones* "appl[ies] with equal force to an assignment by a trust" and concluding that individual trustee, who received assignment of trust's claim, could not proceed with the claim unless represented by counsel)).

Although the Court recognized that an exception to the bar on *pro se* representation of a trust exists where the trustee is the sole beneficiary of a trust without any creditors, the record showed that "at the time [the Zero Point Action] was filed, there were beneficiaries of the Zero Point trust other than Boyce." (*Id.* at 7, 9). Consequently, the Court could not conclude that "'the only party affected by the disposition'" of the Zero Point Action would be Boyce, or that the risks associated with "'allow[ing] a *pro se* litigant to represent another person'" had been adequately mitigated. (*Id.* at 10 (quoting *Guest v. Hansen*, 603 F.3d 15, 20, 21 (2d

Cir. 2010)). Given the timing of the Amendment to the Declaration of Trust—one day after Chase filed its Notice of Removal, which previewed its objection to Zero Point's proceeding in the action without counsel—the Court found it "apparent that Boyce amended the Declaration of Trust to remove those beneficiaries in order to facilitate his *pro se* representation of Zero Point." (*Id.* at 9). The Court concluded that the amendment was "simply another means" of circumventing the rule against nonlawyers representing artificial entities and, thus, "equally impermissible." (*Id.* at 10).

The Court gave Zero Point approximately 45 days, until January 9, 2026, to seek counsel to represent it in the action. (*Id.* at 11–12). The Order stated that if no appearance was filed by that date, Chase could then file a motion to dismiss for failure to prosecute. (*Id.* at 12).

**2. The December 2025 Order**

Instead of finding counsel, Boyce, on November 26, 2025, submitted a motion to substitute himself as the plaintiff instead of Zero Point. (Zero Point Action, Dkt. No. 22). The motion claimed that the November 2025 Order "held that the earlier assignment was ineffective because the same fiduciary capacity appeared on both sides," and attached a new assignment dated November 26, 2025, purporting to have cured that deficiency by assigning Zero Point's claim to Boyce in his *individual* capacity, as opposed to his *fiduciary* capacity. (*Id.* at 2 & Ex. A).

After briefing (Zero Point Action, Dkt. Nos. 23 & 24), the Court denied the motion to substitute in an Order on December 5, 2025. (Zero Point Action, Dkt. No.

25 ("December 2025 Order")). The Court explained that it "does not matter whether Zero Point assigns the claim to Boyce in his individual capacity or in his fiduciary capacity," as either way, "the assignment is equally 'an attempt to circumvent the bar on a non-lawyer's representation of a trust by assigning the trust's cause of action to [Boyce] himself.'" (*Id.* at 2 (quoting Nov. 2025 Order at 5)). Thus, the new assignment did not cure the defect identified in the November 2025 Order, but was "simply another impermissible attempt to flout a well-established and purposeful public policy by means of a procedural device." (*Id.* at 3 (citations omitted)). The Court reiterated that, as stated in the November 2025 Order, Zero Point was required to retain counsel by January 9, 2026, "or risk dismissal of its claims." (*Id.* at 4).

**B. The Instant Action**

Later on December 5, 2025, after this Court denied the motion to substitute Boyce as plaintiff in the Zero Point Action, Boyce commenced this action, bringing the same claims against Chase in his *individual* capacity, and citing the November 26, 2025 assignment as the means by which he is able to bring those claims. (*See* Dkt. No. 1 ("Complaint" or "Compl.") ¶ 6). After Chase notified the district judge initially assigned to the case of its relatedness to the Zero Point Action (Dkt. Nos. 6. 10), the case was reassigned to Judge Daniels as a related case, and the undersigned was designated as the magistrate judge. (Dkt. Entries dated Dec. 16, 2025). This matter was also referred to the undersigned for general pretrial supervision. (Dkt. No. 11).

On December 22, 2025, the undersigned stayed this action pending a determination of whether the Zero Point Action would proceed, as this action "appear[ed] to be duplicative of the [Zero Point Action] and to be another impermissible attempt to circumvent the rule barring a non-lawyer from representing an artificial entity in federal court." (Dkt. No. 14 at 3). In the meantime, Zero Point, through Boyce, filed a letter in the Zero Point Action stating that "it will not be retaining counsel to proceed further in this action." (Zero Point Action, Dkt. No. 27). Despite that filing, in its December 22 Order, the Court gave Zero Point the opportunity to comply with the January 9, 2026 deadline for retaining counsel established in the Zero Point Action, reiterating that if Zero Point did not do so, it "risk[ed] dismissal of its claims." (Zero Point Action, Dkt. No. 29 at 3). Shortly thereafter, on December 30, 2025, Boyce submitted a notice of voluntary dismissal of the Zero Point Action, without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Zero Point Action, Dkt. No. 30).[2]

The Complaint in this action is brought by Boyce "as the assignee and current owner of the claim originally held by Zero Point MGMT." (Compl. ¶ 6). Apart from allegation relating to the assignment from Zero Point to Boyce, and some different verbiage, the Complaint is nearly identical to the complaint in the

[2] As Chase had not yet filed an answer or a motion for summary judgment, Zero Point had the right to voluntarily dismiss the Zero Point Action without court approval. *See* Fed. R. Civ. P. 41(a)(1)(A)(i); *Katzman v. Am. Airlines, Inc.*, No. 97 Civ. 8321 (JSM), 1997 WL 752730, at *1 (noting that Rule 41(a)(1)(A)(i) "gives plaintiff an absolute right to dismissal if filed before an answer or summary judgment").

Zero Point Action. Mirroring the allegations there, Boyce (as assignee) alleges that on or about April 19, 2025, he submitted an application to Chase "seeking a $250,000 credit accommodation" (*id.* ¶ 8); that in support of the application, he tendered a "complete performance package," including an "Affidavit of Trust Credit Tender and Security Interest, the Trust Collateral Addendum for Credit Application, and supporting fiduciary documentation" (*id.* ¶ 9); and that his "tender constitute[s] lawful performance, valid consideration, and security under applicable commercial law principles" (*id.* ¶ 10). Nevertheless, Chase denied Plaintiff's application, issuing a "blanket denial citing an unsupported 'entity type' restriction." (*Id.* ¶ 11; *see also* Zero Point Action, Dkt. No. 1-1 Ex. D (denial letter)).

Plaintiff then sent Chase a "Reconsideration Request, a Notice of Fault and Opportunity to Cure, and an Affidavit of Final Dishonor and Enforcement," after which Chase still "took no action to resolve or perform on the obligations owed." (Compl. ¶¶ 12–13). Plaintiff alleges that Chase's initial failure to issue the credit card, along with Chase's subsequent failure to respond to Plaintiff's reconsideration request, constitute an improper "refus[al]" to perform "obligations owed" to Plaintiff, and that Chase simultaneously "retain[ed] the benefit of Plaintiff's disclosures and tender" despite its failure to perform its obligations. (*Id.* ¶¶ 13–14).

Based on these allegations, the Complaint alleges substantially the same four causes of action set forth in Zero Point's complaint: (1) breach of contract based on Defendant's "wrongful[] refus[al] to honor the application" (*id.* ¶¶ 15–18); (2) "Wrongful Dishonor / Failure to Perform After Tender" (*id.* ¶¶ 19–22); (3) unjust

enrichment (*id.* ¶¶ 23–25); and (4) a declaratory judgment affirming that "Plaintiff's tender constituted valid performance," "Defendant's refusal to honor the credit accommodation constituted breach and dishonor," and "Plaintiff is entitled to enforcement" of the application and further "judicial remedy" (*id.* ¶¶ 26–28). As in the Zero Point complaint, Plaintiff seeks "[e]nforcement of the $250,000 credit accommodation" and damages, in addition to declaratory relief. (*Id.* at 4 (prayer for relief)).

### C. Chase's Motion to Dismiss

After Boyce discontinued the Zero Point Action, the Court granted Chase leave to file a motion to dismiss. (Dkt. No. 22). Chase filed its motion on February 27, 2026 (Dkt. No. 25), along with a supporting memorandum of law (Dkt. No. 26 ("Mot.")) and a declaration from counsel attaching, as exhibits, various documents filed in the Zero Point Action (Dkt. No. 27).

Chase moves to dismiss on multiple grounds. First, Chase argues that Plaintiff's Complaint should be dismissed under Rule 41(b), due to Plaintiff's attempt to circumvent this Court's prior orders in the Zero Point Action by initiating this case instead of retaining counsel to prosecute the action on behalf of Zero Point. (Mot. at 9–13). Second, Chase moves to dismiss under Rule 12(b)(1) for lack of Article III standing, claiming that Boyce has failed to adequately allege that he or Zero Point suffered an "injury in fact." (*Id.* at 13–15). Third, Chase moves to dismiss under Rule 12(b)(6), contending that each of Plaintiff's asserted causes of action fails to state a claim for relief. (*Id.* at 15–22).

Boyce submitted a brief in opposition on March 10, 2026. (Dkt. No. 29 ("Opp'n")). Chase submitted a reply brief in further support of its motion on March 17, 2026. (Dkt. No. 30 ("Reply")).

## LEGAL STANDARDS

### A. Dismissal Under Fed. R. Civ. P. 41(b)

"Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action '[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order.'" *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting Fed. R. Civ. P. 41(b)). "When imposed, the sanction of dismissal 'operates as an adjudication upon the merits,' but may be without prejudice if so specified by the court imposing it." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982) (quoting Fed. R. Civ. P. 41(b)).

"The Second Circuit has articulated a five-factor framework for determining whether a court should dismiss a case under Fed. R. Civ. P. 41(b)." *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022). "This test requires the court to consider: (i) the duration of the plaintiff's failure to comply; (ii) whether the plaintiff was on notice that failure to comply would result in dismissal; (iii) whether the defendants are likely to be prejudiced by further delay in the proceedings; (iv) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (v) whether the judge has adequately considered a sanction less drastic than dismissal." *Id.* (citing *Spencer v. Doe,* 139 F.3d 107, 112–13 (2d Cir. 1998)). "'No one factor is dispositive,' and the

determination is based on the 'record as a whole.'" *Id.* (quoting *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009)).

**B. Lack of Standing Under Fed. R. Civ. P. 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "[M]otions to dismiss for lack of standing are properly raised under Rule 12(b)(1)." *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13 Civ. 7549 (LAK) (JCF), 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014), *R&R adopted*, No. 13 Civ. 7549 (LAK), 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014). However, "the standard applied in such instances is almost identical to that applied for motions under Rule 12(b)(6)." *Id.* Thus, to survive a motion to dismiss under Rule 12(b)(1) for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

**C. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). However, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (citation omitted). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side[.]" *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

*Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). The court must therefore "read the pleadings of a *pro se* plaintiff liberally" and construe them to raise "the strongest possible arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (cleaned up). However, *pro se* complaints must still "contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea,* 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

As explained below, the Court concludes that the Complaint should be dismissed under Rule 41(b) because, under Second Circuit law, Plaintiff was required to retain counsel to prosecute the claims on behalf of Zero Point and was not permitted to circumvent that requirement by assigning the claims to himself. Even if that were not the case, the Court further concludes, in the alternative, that the Complaint fails to state a proper claim for relief and should therefore be dismissed under Rule 12(b)(6) as well.

### A. Zero Point's Failure to Obtain Counsel Mandates Dismissal

Chase first seeks dismissal of this action under Rule 41(b) based on Plaintiff's failure to properly prosecute the claims at issue by refusing to retain counsel for Zero Point and failure to comply with this Court's orders requiring the retention of counsel, notwithstanding the assignments of the claims to Boyce. (Mot. at 11). The Court agrees that dismissal is warranted.

As set forth more fully in the Court's November 2025 and December 2025 Orders, the longstanding rule requiring artificial entities to retain counsel in federal court actions applied to the claims asserted by Zero Point in the Zero Point Action. (*See* Nov. 2025 Order at 4 ("Plaintiff does not dispute the well-established rule barring non-lawyers from representing artificial entities or its application to trusts."); Dec. 2025 Order at 2). Moreover, under the Second Circuit's decision in *Jones*, the purported assignments of Zero Point's claims to Boyce, in either his fiduciary or individual capacity, did not permit Zero Point or Boyce to circumvent that rule. (Nov. 2025 Order at 10; Dec. 2025 Order at 3). Nor did the purported amendment of the Zero Point trust instrument to remove beneficiaries other than Boyce. (Nov. 2025 Order at 10). Similarly, Plaintiff could not circumvent the ban on nonlawyer representation of trusts by substituting himself for Zero Point as the plaintiff. (Dec. 2025 Order at 3).

Therefore, as the Court's orders made plain, Zero Point was required to retain counsel, by the designated deadline of January 9, 2026, if it wished to pursue the Zero Point Action, or face dismissal of its claims. (Nov. 2025 Order at 12; Dec. 2025 Order at 4). Zero Point did not retain counsel by the deadline. Instead, it made explicit that "it [would] not be retaining counsel to proceed further in [the Zero Point Action]." (Zero Point Action, Dkt. No. 27). It then discontinued the Zero Point Action altogether without ever having retained counsel. (Zero Point Action, Dkt. No. 30).

When an artificial entity files an action or asserts claims *pro se*, is ordered to retain counsel if it wishes to pursue the claims, and then fails to do so within the time required, the claims will be dismissed under Rule 41(b) for failure to prosecute. *See, e.g.*, *Wellsville Manor LLC v. Great Am. Ins. Co.*, No. 22 Civ. 1229 (MKB), 2025 WL 2173642, at *4 (E.D.N.Y. July 31, 2025) ("Because Boom has failed to obtain counsel as required by [Rule 41(b)], and has therefore failed to prosecute its case, the Court grants Evanston's motion and dismisses the Fourth-Party Action."); *Winters v. Phountain PH Holdings Corp.*, No. 23 Civ. 1668 (JMA) (JMW), 2025 WL 814750, at *4 (E.D.N.Y. Mar. 12, 2025) (dismissing crossclaims under Rule 41(b) where "Phountain's failure to retain counsel renders it impossible for Phountain to appear in this action and prosecute its crossclaims"); *Schwartzman v. Label, LLC*, No. 15 Civ. 5793 (VSB) (SDA), 2020 WL 1034373, at *1 (S.D.N.Y. Jan. 22, 2020) ("Where a corporate plaintiff fails to appear by counsel, 'dismissal for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure is appropriate.'" (quoting *Negrin v. Kalina*, No. 09 Civ. 6234 (LGS) (KNF), 2013 WL 5630681, at *1 (S.D.N.Y. Oct. 15, 2013), *R&R adopted*, 2013 WL 5925916 (S.D.N.Y. Nov. 5, 2013))), *R&R adopted*, 2020 WL 1033531 (S.D.N.Y. Mar. 3, 2020); *Streetbrains.com, LLC v. Lyris, Inc.*, No. 09 Civ. 1980 (SAS), 2011 WL 1483967, at *2 (S.D.N.Y. Apr. 18, 2011) (granting defendants' motion to dismiss for failure to prosecute under Rule 41(b) where plaintiff was informed of rule prohibiting it from proceeding *pro se* and nonetheless "refused to retain new counsel"); *see also Jones*,

722 F.2d at 21–22 (affirming district court's conditional order dismissing action unless counsel appeared on behalf of the corporate plaintiff within 45 days).

Here, of course, the Court can no longer dismiss the Zero Point Action, since Zero Point already dismissed that action voluntarily. But the Court can, and must, dismiss *this* action. There is no meaningful difference between this action and the Zero Point Action, as the claims asserted are identical. Although the named plaintiff here is Boyce, rather than Zero Point, that difference is due solely to Boyce's contention that the assignment allows him to pursue the claims in his individual capacity "as assignee." (Compl. ¶ 6; *see also* Opp'n at 3–4 (arguing that the assignment "changed ownership of the claims entirely" and allows Boyce to "prosecute[] the claims in his personal capacity as their owner")). But the Court has already rejected that contention based on binding Second Circuit precedent, and Boyce offers nothing to suggest the Court's prior rulings were incorrect.

Indeed, there is no functional difference between Boyce's prior motion to substitute himself as the plaintiff in the Zero Point Action and what Boyce did after this Court denied that motion: dismissing the Zero Point Action and commencing this action to assert the same claims in his own name.[3] The Court denied the motion to substitute because it was "another impermissible attempt" to circumvent

[3] Boyce's opposition brief effectively acknowledges as much, continuing to rely on the argument that Rule 17(a)(3) permits "substitution" of the real party in interest (*i.e.*, Boyce himself). (Opp'n at 3). The Court's December 2025 Order rejected Plaintiff's reliance on Rule 17(a)(3) to override the rule against artificial entities assigning their claims to individuals to circumvent the rule against *pro se* representation. (Dec. 2025 Order at 2–3). Here too, Boyce offers no authority for a contrary result.

the *Jones* rule forbidding an artificial entity from assigning its claims to a lay person in order for the lay person to prosecute those claims. (Dec. 2025 Order at 3). The same is equally true of Boyce's latest gambit. If the rule could be evaded by the simple expedient of the entity voluntarily dismissing its own suit, and an individual nonlawyer owner or trustee commencing a new action *pro se* in his or her own name as "assignee," the rule would be rendered a nullity.

Application of the five factors considered in evaluating dismissal under Rule 41(b) yields the same conclusion. Plaintiff was repeatedly put on notice in the Zero Point Action that pursuing these claims without retaining counsel would result in dismissal. (Nov. 2025 Order at 12; Dec. 2025 Order at 4; Zero Point Action, Dkt. No. 29 at 3). Ample time was given for counsel to be retained, yet Plaintiff failed to do so and affirmatively stated that he would not. (Zero Point Action, Dkt. No. 27). Further, allowing claims of corporations and other artificial entities to be prosecuted by a nonlawyer such as Boyce "creates unusual burdens not only for the party he represents but as well for his adversaries and the court." *Jones*, 722 F.2d at 22; (*see also* Nov. 2025 Order at 10–11). Finally, no other sanctions would be appropriate given that Zero Point has failed to retain counsel and stated it will not do so. *See, e.g.*, *Wellsville Manor*, 2025 WL 2173642, at *4 (finding dismissal warranted after considering five factors); *Schwartzman*, 2020 WK 1034373, at *2; *Streetbrains.com*, 2011 WL 1483967, at *2.

Accordingly, the undersigned recommends that this action be dismissed based on Zero Point's inability to prosecute its claims *pro se* and failure to retain counsel to do so.

**B. Chase's Standing Argument Lacks Merit**

Chase next argues that Plaintiff has not established standing under Article III. (Mot. at 13–15). "To establish constitutional standing at the motion to dismiss stage, a plaintiff must plead facts showing '(i) that he [or she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *In re Warner Music Grp. Data Breach*, No. 20 Civ. 7473 (PGG), 2025 WL 2531832, at *6 (S.D.N.Y. Sept. 3, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

Chase points to the first element—injury in fact—in its motion to dismiss, claiming that Boyce "does not allege *any* injury, much less a concrete injury, whether to Zero Point or himself." (Mot. at 14 (emphasis in original)). According to Chase, the only "discernable injury" alleged is the "denial of a credit card application" and Zero Point "not receiving the 'accommodation' it sought to obtain from Chase," which Chase argues is "woefully insufficient" to establish standing. (*Id.*). Plaintiff disagrees, contending that "[t]he complaint alleges financial harm resulting from defendant's conduct" that is "directly traceable to Defendant's actions." (Opp'n at 4).

The Court finds Chase's standing argument unpersuasive. Chase's argument is premised on its assertion that Zero Point could not have suffered a cognizable injury because "Zero Point has no legally protected interest in obtaining a credit card," as financial institutions "are not obligated to provide a credit card to every prospective customer who applies for one." (Opp'n at 14). But this argument confuses the standing issue with the merits of Plaintiff's claims. Chase reasons that *because* Zero Point had no valid claim to a credit card, it suffered no injury. That reasoning is foreclosed by the principle that "a plaintiff's standing does not depend on the eventual success of his legal theory." *B.B. by Rosenthal v. Hochul*, 166 F.4th 259, 277 (2d Cir. 2026). Rather, "'[f]or the purposes of the standing inquiry,' a court must 'assume' that the plaintiffs 'are correct' on their legal theory." *Id.* at 278 (quoting *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023)).

Assuming the correctness of Plaintiff's legal theories—*i.e.*, that Chase breached its contractual obligations, engaged in wrongful dishonor, and was unjustly enriched by not issuing the credit card to Zero Point—then Zero Point did have a legal right to receive, and Chase had a legal obligation to provide, the credit card. On that assumption, Zero Point did suffer an injury in fact. *See Diaz v. Chase*, 416 F. Supp. 3d 1090, 1095 (D. Nev. 2019) (finding plaintiff's alleged damages, "including the denial of a credit card," to be sufficiently concrete and particularized to "adequately allege[] an injury-in-fact for Article III standing"). The other two elements of the test for Article III standing are likewise satisfied: the

alleged injury flowing from denial of the credit card was caused by Chase, and the injury can be redressed by an award of damages or specific performance.

Accordingly, Chase's motion to dismiss for lack of standing under Rule 12(b)(1) should be denied.

### C. The Complaint Fails to State a Plausible Claim for Relief

Although the Complaint may adequately allege standing, it fails to state a claim under any of the four causes of action asserted, warranting dismissal, in the alternative, under Rule 12(b)(6).[4]

#### 1. Breach of Contract Claim

Under New York law, "the elements of a claim for breach of contract are: '[1] the existence of a contract, [2] the plaintiff's performance thereunder, [3] the defendant's breach thereof, and [4] resulting damages.'" *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 311 F. Supp. 3d 623, 628 (S.D.N.Y. 2018) (quoting *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161 (1st Dep't 2010)); *see Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000).

---

[4] Chase argues that Boyce's failure to "respond to defendant's arguments" outlined in the Rule 12(b)(6) portion of its moving brief "constitutes abandonment of plaintiff's claims," and that the abandonment rule "applies equally to *pro se* plaintiffs." (Reply at 2). However, in light of the Court's duty to "read the pleadings of a *pro se* plaintiff liberally," *McPherson*, 174 F.3d at 280, and the fact that Plaintiff addressed (albeit in very general terms) Defendant's 12(b)(6) arguments in Section VII of his opposition (Opp'n at 5), the Court declines to find abandonment here. Indeed, even a plaintiff's complete failure to oppose a motion to dismiss "cannot itself justify dismissal of a complaint," as "'the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).

Chase principally argues that the breach of contract claim falters on the first element—that Plaintiff fails to allege the "existence of a contract that actually binds Chase," and that Plaintiff's references to an "application," "tender," and "notice" are "not contracts that bind Chase in any way." (*Id.* at 16 (emphasis omitted)). The Court agrees. Plaintiff simply has not sufficiently alleged a contractual relationship with Chase by virtue of the credit card application. For there to be a breach of contract, there must be an "enforceable agreement" between Chase and Zero Point. *Jun v. Bank of Am., N.A.*, No. 23-7903, 2024 WL 5135381, at *2 (2d Cir. Dec. 17, 2024) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (1st Dep't 2009)). That requires pleading sufficient facts to establish "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Id.*

Boyce alleges that his "tender" of the application package constituted "lawful performance" and "valid consideration." (Compl. ¶¶ 8–9). But at best, these allegations show that Zero Point made an *offer* to enter into a contractual relationship with Chase. Boyce fails to allege that there was an *acceptance* of the offer by Chase. To the contrary, Boyce's own allegations show that Chase *denied* Boyce's application (Compl. ¶ 11), demonstrating Chase's "irrefutable intent to *not* be bound" to the application. *Nexamp, Inc. v. Consol. Edison, Inc.*, No. 24 Civ. 1502 (JGLC), 2025 WL 936636, at *4 (S.D.N.Y. Mar. 25, 2025) (emphasis in original). Boyce therefore fails to establish the existence of a valid contractual relationship.

Put differently, submitting a credit card application alone cannot create a binding agreement, as Chase was under no obligation to provide Boyce with a credit card following his submission. *See Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 533 (E.D.N.Y. 2015) ("[S]ubmitting an application to [Defendant's] loan modification program does not create a binding agreement" because "[u]nder New York law, defendant was under no obligation to modify the terms of plaintiff's mortgage."); *see also Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448, (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal[.]"). Plaintiff does not allege any facts that would support a plausible inference that the mere submission of a credit card application guarantees the applicant's right to receive one. Rather, he merely states that "Plaintiff tendered full performance and satisfied all conditions *necessary to create a binding obligation*" (Compl. ¶ 16 (emphasis added))—not that such an obligation was actually assented to by Chase. Plaintiff has therefore failed to state a claim for breach of contract. *See Jun*, 2024 WL 5135381, at *2 (affirming dismissal of breach of contract claim where plaintiff's allegations were insufficient to show that banks "entered into an agreement with" plaintiff).

**2. Wrongful Dishonor Claim**

Next, Boyce's "wrongful dishonor/failure to perform" claim is not a valid cause of action for a denied credit card application. Although Boyce's Complaint and opposition brief in this action do not point to any authority for the wrongful dishonor cause of action, the complaint in the Zero Point Action relied on "UCC

Article 3" and general "UCC principles" for "commercial dishonor" and "dishonor of tender" causes of action. (Zero Point Action, Dkt. No. 1-1 ¶¶ 7, 12, 18). In light of its responsibility to construe Plaintiff's submissions to raise the strongest arguments they suggest, *see McPherson*, 174 F.3d at 280**,** the Court analyzes possible causes of action under New York UCC Articles 3, 4 and 5 of New York's Uniform Commercial Code, all of which impose liability for some form of wrongful dishonor. As Chase correctly argues, however, Boyce has failed to state a claim under any of these UCC provisions. (*See* Mot. at 18).

To start, UCC Article 3 is plainly inapplicable to the facts alleged in the Complaint. Article 3 is restricted to "commercial paper—that is to say, to drafts, checks, certificates of deposit and notes as defined in Section 3-104(2)." *Weyant v. Phia Grp. LLC*, 556 F. Supp. 3d 310, 316 (S.D.N.Y. 2021) (citation omitted). As Plaintiff acknowledges, "[t]his dispute arises from Defendant's denial of Plaintiff's credit card application." (Opp'n at 2). A credit card—let alone an application for a credit card—is not an instrument covered by Article 3, and Plaintiff alleges no facts to suggest otherwise. Thus, the provisions in Article 3 relating to dishonor (*see* N.Y. U.C.C. § 3-501–02, 3-507–11) do not apply.

UCC § 4-402 creates liability against banks for "wrongful dishonor" of an "item," which is defined as "an instrument for the payment of money even though it is not negotiable but does not include money." N.Y. U.C.C. § 4-104(g). There are no allegations that would permit the Court to conclude that a credit card or an application for a credit card application is an instrument "for the payment of

money." Plaintiff therefore fails to allege facts giving rise to a cause of action under UCC Article 4.

Lastly, UCC Article 5-111 provides remedies against "issuers" for "wrongful dishonor[]" of an "obligation to pay money under a letter of credit," and, if the "issuer's obligation under the letter of credit is not for the payment of money," for specific performance. N.Y. U.C.C. § 5-111(a). Letters of credit "provide a seller or lender . . . with a guaranteed means of payment from . . . the issuer [] in lieu of relying on the financial status of a [customer] (the applicant)." *Milky Whey, Inc. v. HSBC Bank USA, N.A.*, 728 F. Supp. 3d 308, 312–13 (S.D.N.Y. 2024) (quoting *Nissho Iwai Eur. v. Korea First Bank*, 99 N.Y.2d 115, 119, 752 N.Y.S.2d 259, 782 N.E.2d 55 (2002)). Boyce sets forth no allegations indicating that Chase was required to issue a credit card to Zero Point upon submission of the application or following a reconsideration request. To the contrary, Chase's denial letter states plainly that Chase "does not currently lend to businesses of [Plaintiff's] business or entity type." (Zero Point Action, Dkt. No. 1-1 Ex. D).[5] Chase therefore correctly contends that Plaintiff "does not—and cannot—point to any basis in the New York

[5] Although the Chase denial letter is not attached to the Complaint, it is explicitly referenced in Paragraph 11 of the Complaint and was attached to the complaint in the Zero Point Action. It may therefore be considered on Chase's motion to dismiss for failure to state a claim. *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) (court may consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" at motion to dismiss stage (citation omitted)); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

UCC or elsewhere that would support a dishonor claim based on the denial of a credit card application." (Mot. at 18).

Accordingly, Boyce's allegation that Chase engaged in wrongful dishonor by "fail[ing] to acknowledge, process, or respond to the tender" of the credit card application (Compl. ¶ 21) does not plausibly plead a claim for wrongful dishonor, and this claim should also be dismissed.

**3. Unjust Enrichment Claim**

"To sustain a claim for unjust enrichment under New York law, a plaintiff must plausibly allege '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 245–46 (S.D.N.Y. 2022) (quoting *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018)).

Here, Plaintiff alleges that Chase "retain[ed] the benefit of Plaintiff's disclosures and tender" (Compl. ¶ 14) and that Chase's retention of those benefits "constitutes unjust enrichment" (*id.* ¶ 25). But he does not explain how Chase might have benefitted from those materials. *See Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F. Supp. 2d 486, 490 (S.D.N.Y. 1999) (dismissing unjust enrichment claim where plaintiff "fail[ed] to provide any explanation of the nature of [defendant's] enrichment"). Rather, Plaintiff pleads only "in the most general terms" that "Defendant's refusal to perform while retaining those benefits constitutes unjust enrichment." *Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *11 (S.D.N.Y. Mar. 24, 2009) (dismissing unjust

enrichment claim where Plaintiff alleged only that Defendant was "enriched, at Plaintiffs' expense, by Defendant's actions and/or omissions").

Absent supporting factual allegations, Plaintiff has pled only a bare legal conclusion that Chase was unjustly enriched, which the Court need not credit on a motion to dismiss. *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). Boyce therefore fails to state a claim for unjust enrichment.

**4. Declaratory Judgment Claim**

Plaintiff's declaratory judgment claim must be dismissed as well. Courts regularly dismiss declaratory judgment claims when the declaratory judgment "seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006); *see also Campione v. Campione*, 942 F. Supp. 2d 279, 285 (E.D.N.Y. 2013) (dismissing declaratory judgment claim "because it parallels the other claims and merely seeks a declaration of the same rights and obligations") (citation omitted).

Plaintiff seeks a declaratory judgment "affirming that . . . Plaintiff's tender constituted valid performance; . . . Defendant's refusal to honor the credit accommodation constituted breach and dishonor; . . . [and] Plaintiff is entitled to enforcement and judicial remedy." (Compl. ¶ 28). Those requested declarations are covered by the essential elements of Plaintiff's claims for breach of contract and wrongful dishonor. Such a declaratory judgment would thus "serve no purpose." *Optanix, Inc. v. Alorica Inc.*, No. 20 Civ. 9660 (GHW), 2021 WL 2810060, at *4

(S.D.N.Y. July 6, 2021); *see also, e.g.*, *CVS Albany, LLC v. 1688 Rojav Realty, LLC*, No. 24 Civ. 7145 (LTS), 2025 WL 2614077, at *4 (S.D.N.Y. Sept. 10, 2025) (dismissing declaratory judgment claim where claim was duplicative of breach of contract claim); *Campione*, 942 F. Supp. 2d at 285 (dismissing declaratory judgment claim where resolution of plaintiff's unjust enrichment claim would "necessarily entail a finding" on the issue as to which a declaration was sought).

Because it "seeks no relief that is not implicitly sought in the other causes of action," *Sofi Classic*, 444 F. Supp. 2d at 249, Plaintiff's declaratory judgment claim must also be dismissed.

**C. Leave to Amend Should Be Denied**

The Court now considers, *sua sponte*, whether Boyce should be given leave to replead. *See Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 774 (S.D.N.Y. 2015). A court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, as detailed above, the claims alleged in this action can only be prosecuted by counsel for Zero Point, and Boyce has refused to retain counsel. Moreover, Boyce's claims all "fall on legal grounds that cannot be remedied by repleading." *Regnante*, 134 F. Supp. 3d at 774. There is no indication that Plaintiff could plead facts that would overcome these legal deficiencies. Putting aside Boyce's procedural maneuvers over the last several months, "the problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco*

*v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). "Repleading would thus be futile." *Id.*

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's motion to dismiss be **GRANTED**.

DATED: New York, New York
July 17, 2026

The Honorable Gary Stein
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable George B. Daniels. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).