**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MALCOLM BLAIR BOYCE,<br><br>Plaintiff,<br><br>-against-<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendant. | **Case No. 1:25-cv-10131 (GBD)(GS)**<br><br>Hon. George B. Daniels<br>District Judge<br><br>Hon. Gary Stein<br>Magistrate Judge |

# PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE GARY STEIN

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiff Malcolm Blair Boyce respectfully submits these Objections to the Report and Recommendation ("R&R") issued by Magistrate Judge Gary Stein on July 17, 2026 (ECF No. 33), which recommends that the District Court grant Defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion to dismiss.

The R&R gets one thing right and several things wrong. It correctly recommends that Chase's Rule 12(b)(1) motion challenging Article III standing be denied. R&R at 20. But it recommends dismissal under Rule 41(b) — the "harshest of sanctions," *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) — without engaging with the mandatory, less-drastic procedural safeguard Congress and the Advisory Committee prescribed for exactly this situation: Federal Rule of Civil Procedure 17(a)(3). And it recommends dismissal with prejudice under Rule 12(b)(6) without permitting a single opportunity to replead, contrary to the Second Circuit's settled and repeatedly-emphasized policy in favor of granting *pro se* plaintiffs leave to amend at least once.

Plaintiff's objections proceed in seven principal parts. *First*, Plaintiff objects to the Rule 41(b) recommendation because the concern the Magistrate Judge identified — that a non-lawyer trustee cannot litigate a trust's claims — is not a "failure to prosecute" problem at all. It is a real-party-in-interest problem governed by Rule 17(a)(3), which by its express terms prohibits dismissal until a reasonable time for cure has passed. *Second*, Plaintiff has already cured the defect: the November 26, 2025 assignment transferred full title to the claims to Boyce in his individual capacity before this action was filed, so Boyce, not Zero Point, is the real party in interest here. *Third*, the Second Circuit's decision in *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983), on which the R&R principally relies, is materially distinguishable — *Jones* concerned an entity that remained a party to the litigation; here, Zero Point voluntarily and unconditionally dismissed itself and is no longer before this Court in any capacity. *Fourth*, the Second Circuit's decision in *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), affirmatively supports Boyce's individual prosecution of these claims. *Fifth*, the R&R's Rule 41(b) five-factor analysis is superficial — it treats each factor as met by generalized reference to notice and delay, without

meaningful consideration of the mandatory Rule 17(a)(3) alternative and without any concrete showing of prejudice to Chase. *Sixth*, Plaintiff's substantive claims warrant, at minimum, leave to amend under the well-settled *pro se* standard. *Seventh*, the R&R correctly rejected Chase's standing challenge, and that portion of the R&R should be adopted.

The District Court should reject the recommendation to dismiss under Rule 41(b), adopt the recommendation to deny the Rule 12(b)(1) motion, and — to the extent it finds any Rule 12(b)(6) deficiency — grant leave to amend rather than dismiss with prejudice.

## II. STANDARD OF REVIEW

A district judge's review of a magistrate judge's report and recommendation on a dispositive motion is governed by 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure. Both provisions require the district judge to make a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The Supreme Court has made clear that the *de novo* determination requirement is designed to preserve "the ultimate adjudicatory power" of the Article III judge over dispositive matters. *Thomas v. Arn*, 474 U.S. 140, 152–53 (1985); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980) (§ 636(b)(1) requires "a 'de novo determination,' not necessarily a de novo hearing"). The Second Circuit has repeatedly reaffirmed this standard. *See Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002); *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

Critically, the Second Circuit has confirmed that a district judge must apply *de novo* review to any objection that is properly raised and briefed, even where the objection restates arguments previously presented to the magistrate judge. *Nambiar v. Cent. Ortho. Grp., LLP*, 158 F.4th 349 (2d Cir. 2025). Repetition alone does not downgrade the standard to clear-error review; only pure boilerplate incorporation without substantive engagement does so. *Miller*, 43 F.4th at 120 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection.").

The Objections that follow are specific, briefed with citation to controlling authority, and grounded in the record. They are therefore entitled to full *de novo* review.

# III. PROCEDURAL HISTORY

The material procedural history is straightforward and, for present purposes, largely undisputed.

### *A. The Zero Point Action*

On September 21, 2025, Zero Point MGMT ("Zero Point"), a New York private irrevocable trust, filed a complaint in New York Supreme Court, New York County, against Chase, arising from Chase's April 2025 denial of a $250,000 credit accommodation application. R&R at 2. Chase removed the action to this Court on the basis of diversity jurisdiction on October 10, 2025. *Id.*

Boyce, the trustee of Zero Point and not a licensed attorney, signed and verified the initial complaint on the trust's behalf. R&R at 2–3. Chase raised the entity-representation issue by letter on October 20, 2025, contending that Zero Point could not proceed *pro se* and that Boyce, as a non-lawyer trustee, could not represent it. R&R at 3.

On the same day, Boyce filed a document notifying the Court that Zero Point had assigned the claims to Boyce in his capacity as trustee and attached the assignment. R&R at 3. He subsequently filed an Amendment to the Declaration of Trust identifying himself as the sole trustee and sole beneficiary of Zero Point. *Id.*

The Court issued its November 24, 2025 Opinion & Order rejecting these initial efforts. R&R at 3–5. On November 26, 2025, Boyce moved to substitute himself as plaintiff, attaching a new assignment dated November 26, 2025, which — importantly — assigned Zero Point's claims to Boyce in his individual capacity, not his fiduciary capacity. R&R at 5. The Court denied that substitution motion on December 5, 2025. R&R at 5–6.

### *B. The Instant Action*

Later that same day — December 5, 2025 — Boyce filed the present action in his individual capacity, as the "assignee and current owner of the claim originally held by Zero Point MGMT." Compl. ¶ 6; R&R at 6–7. The Complaint expressly relies on the November 26, 2025 individual-capacity assignment as the legal predicate for Boyce's ownership of the claims. R&R at 6.

### *C. Voluntary Dismissal of the Zero Point Action*

On December 30, 2025, Zero Point voluntarily dismissed the Zero Point Action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). R&R at 7. The Magistrate Judge expressly acknowledged that "Zero Point had the right to voluntarily dismiss the Zero Point Action without court approval." R&R at 7 n.2 (citing *Katzman v. Am. Airlines, Inc.*, No. 97 Civ. 8321 (JSM), 1997 WL 752730, at *1). No merits determination was made. The Zero Point Action no longer exists.

### *D. The Motion to Dismiss*

Chase moved to dismiss the present action on February 27, 2026, invoking Rules 12(b)(1), 12(b)(6), and 41(b). R&R at 9. On July 17, 2026, the Magistrate Judge issued the 28-page R&R now before the District Court, recommending dismissal on Rule 41(b) grounds and, alternatively, on Rule 12(b)(6) grounds as to each of the four causes of action. R&R at 13, 20–28. The R&R correctly recommended denial of the Rule 12(b)(1) standing motion. R&R at 18–20.

These Objections are timely filed within the 14-day period prescribed by 28 U.S.C. § 636(b)(1) and Rule 72(b)(2).

## IV. STATEMENT OF ISSUES

The Objections raise the following specific issues for *de novo* review:

1. Whether the Magistrate Judge erred in recommending dismissal under Rule 41(b) without applying the mandatory "reasonable time to cure" requirement of Rule 17(a)(3), which by its plain terms prohibits dismissal for failure to prosecute in the name of the real party in interest until a reasonable opportunity for ratification, joinder, or substitution has been provided.
2. Whether the Magistrate Judge erred in treating this action as a continuation of the Zero Point Action, when Zero Point voluntarily dismissed itself under Rule 41(a)(1)(A)(i) and is no longer a party to any litigation, and when Boyce holds a pre-suit, individual-capacity assignment of the underlying claims.

3. Whether the Magistrate Judge erred in extending *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983), to a factual context materially different from *Jones*, where the artificial entity remained a party to the litigation, when here the entity has exited the case entirely and the individual assignee sues solely in his own name on his own fully-owned chose in action.
4. Whether the Magistrate Judge erred in failing to give meaningful consideration to *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), which recognized that a sole beneficiary of a "legal fiction" entity may proceed *pro se* on claims that are, in substance, his own.
5. Whether the Magistrate Judge's application of the five-factor Rule 41(b) test was superficial, particularly with respect to (a) the absence of concrete prejudice to Chase, (b) the failure to consider Rule 17(a)(3) as a mandatory less-drastic alternative, and (c) the qualitative difference between a real-party-in-interest defect and dilatory prosecution.
6. Whether the Magistrate Judge properly recommended denial of Chase's Rule 12(b)(1) standing motion (which Plaintiff does not challenge and asks the Court to adopt).
7. Whether, to the extent any Rule 12(b)(6) deficiency was properly identified, the Magistrate Judge erred in recommending dismissal with prejudice rather than granting leave to amend at least once, consistent with the Second Circuit's settled policy for *pro se* plaintiffs.

## V. OBJECTIONS TO FINDINGS OF FACT

Plaintiff does not dispute the R&R's core historical narrative. Plaintiff does, however, respectfully object to certain factual characterizations that materially color the legal analysis:

### *A. Characterizations of "Circumvention"*

The R&R repeatedly characterizes Boyce's actions as attempts to "circumvent," "evade," or engage in a "gambit" to avoid the entity-representation rule. *See, e.g.*, R&R at 4–5, 6, 16–17. These characterizations conflate a good-faith procedural sequence — an initial trust filing, followed by successive assignments and, ultimately, a voluntary dismissal and refiling in Boyce's own name as sole beneficiary and individual assignee — with willful defiance of the Court's orders. The record shows that Boyce responded to each of the Court's rulings with a further procedural adjustment intended to satisfy the concerns identified. That is not "evasion"; it is *pro*

*se* problem-solving, entitled to liberal construction under *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

***B. Treatment of the Two Actions as Identical***

The R&R characterizes this action as one in which the "claims asserted are identical" to those in the Zero Point Action, so that "[a]lthough the named plaintiff here is Boyce, rather than Zero Point, that difference is due solely to Boyce's contention that the assignment allows him to pursue the claims in his individual capacity 'as assignee.'" R&R at 16. That characterization treats the identity of the underlying transactions as legally equivalent to the identity of the parties. It is not. A validly assigned chose in action, once transferred, belongs to the assignee, who may sue in his own name; the assignee is not the assignor, and a suit by the assignee is not, in law, a suit by the assignor. *See* N.Y. Gen. Oblig. Law § 13-101; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–19 (2d Cir. 1997); *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286–87 (2008).

***C. Statement That Plaintiff Offers "Nothing"***

The R&R states that Boyce "offers nothing to suggest the Court's prior rulings were incorrect." R&R at 16. In fact, Plaintiff's opposition brief expressly invoked Rule 17(a)(3) — a point the R&R acknowledges (R&R at 16 n.3) but does not analyze substantively. As set forth below, Rule 17(a)(3) is not merely a subsidiary consideration; it is a mandatory constraint that displaces any Rule 41(b) analysis premised on a real-party-in-interest defect.

## VI. OBJECTIONS TO CONCLUSIONS OF LAW

Plaintiff objects to the following legal conclusions in the R&R, in the order in which they appear:

A. The conclusion that "the purported assignments of Zero Point's claims to Boyce, in either his fiduciary or individual capacity, did not permit Zero Point or Boyce to circumvent [the entity-representation] rule." R&R at 14.

B. The conclusion that there is "no meaningful difference between this action and the Zero Point Action, as the claims asserted are identical." R&R at 16.

C. The conclusion that the five-factor Rule 41(b) test warrants dismissal. R&R at 17.

D. The conclusion that Boyce failed to state a claim for breach of contract, wrongful dishonor, unjust enrichment, and declaratory judgment. R&R at 20–27.

E. The conclusion that "[r]epleading would . . . be futile" and leave to amend should be denied. R&R at 27–28.

Each of these conclusions is addressed in the Arguments that follow. Plaintiff does not object to the R&R's rejection of Chase's Rule 12(b)(1) standing challenge (R&R at 18–20), and asks the District Court to adopt that portion of the R&R.

## VII. RULE 41(b) ANALYSIS — DISMISSAL WAS INAPPROPRIATE

### A. Rule 41(b) Dismissal Is the "Harshest of Sanctions" and Requires Rigorous Application of the Five-Factor Test

Rule 41(b) authorizes dismissal for failure to prosecute or comply with a court order. Fed. R. Civ. P. 41(b). But the Second Circuit has stated, over and over, that dismissal under Rule 41(b) — particularly with prejudice — is "the harshest of sanctions" and must be reserved for "extreme situations." *LeSane*, 239 F.3d at 209; *see also Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014); *Drake v. Norden Sys., Inc.*, 375 F.3d 248, 251 (2d Cir. 2004). As Judge Feinberg observed decades ago, dismissal for failure to prosecute is "pungent, rarely used, and conclusive," and "[a] district judge should employ it only when he is sure of the impotence of lesser sanctions." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir. 1980).

The five-factor test governing Rule 41(b) dismissal — which the R&R correctly identifies (R&R at 10–11) — requires the Court to consider:

(i) the duration of the plaintiff's failure to comply;

(ii) whether the plaintiff was on notice that failure to comply would result in dismissal;

(iii) whether the defendants are likely to be prejudiced by further delay in the proceedings;

(iv) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and

(v) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996); *see Baptiste*, 768 F.3d at 216. "No one factor is dispositive," and the analysis must be based on "the record as a whole." *Baptiste*, 768 F.3d at 216.

The R&R's application of these factors is conclusory. It devotes only a single paragraph (R&R at 17) to the five-factor test and satisfies itself with generalized observations about notice and delay. That is insufficient under Second Circuit standards for the district court's independent *de novo* review.

### B. The Rule 41(b) Analysis Was Superficial and Failed to Meaningfully Consider Lesser Sanctions

*Duration.* The R&R does not identify any conduct by Boyce in this action that constitutes dilatory prosecution. This action has moved briskly: Complaint filed December 5, 2025; motion to dismiss filed February 27, 2026; opposition filed March 10, 2026; reply filed March 17, 2026. There has been no missed deadline, no failure to appear, no failure to respond, no violation of any order entered in this action. The "duration" factor is directed at delay caused by plaintiffs who ignore court orders or fail to advance their cases. *See LeSane*, 239 F.3d at 210. Nothing of that kind occurred here.

*Notice.* The R&R relies on notice given in the Zero Point Action — a different case, involving a different plaintiff (the trust), governed by different procedural circumstances. R&R at 17. Notice given to a trust in one action cannot substitute for notice given to a different plaintiff (Boyce individually) in a different action. Even if it could, Boyce responded to that notice not by ignoring it, but by taking additional procedural steps — including the November 26, 2025 individual assignment — designed to address the concerns the Court had identified.

*Prejudice.* The R&R contains no finding of actual prejudice to Chase. It observes only that permitting non-lawyer prosecution "creates unusual burdens" for adversaries and the court, *quoting Jones*, 722 F.2d at 22. R&R at 17. That is a generalized policy statement, not a case-specific prejudice finding. Chase has been on notice of the underlying dispute since April 2025; it has fully briefed its dispositive motion; and it has identified no witnesses lost, no evidence spoiled, and no discovery burden imposed by the sequence of filings. Absent concrete prejudice, this factor cuts strongly against the "harshest of sanctions." *LeSane*, 239 F.3d at 210.

*Balancing.* The Second Circuit has emphasized that dismissal is warranted only where "the need to alleviate court calendar congestion is sufficiently compelling to justify a weighty sanction." *LeSane*, 239 F.3d at 210. There is no calendar-congestion problem here — this action is a discrete, focused dispute in which the parties have fully briefed a dispositive motion.

*Lesser sanctions.* This is where the R&R's analysis is most vulnerable. The R&R devotes a single sentence to the "lesser sanctions" factor, observing that "no other sanctions would be appropriate given that Zero Point has failed to retain counsel." R&R at 17. But that statement (a) again conflates the trust with Boyce individually, and (b) entirely fails to consider the mandatory less-drastic alternative that Rule 17(a)(3) prescribes. As set forth below, Rule 17(a)(3) is not merely a "lesser sanction" — it is a procedural rule that expressly forbids dismissal on real-party-in-interest grounds until a reasonable time to cure has passed. Failing to consider that rule, in a case that fundamentally is a real-party-in-interest case, is legal error.

### C. Rule 17(a)(3) Prohibits Dismissal Without a Reasonable Time to Cure — And Boyce Has Already Cured

Rule 17(a)(3) is dispositive. Its text is unambiguous:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3) (emphasis added). The Rule uses the mandatory language "may not dismiss . . . until." Its purpose, as the Second Circuit has explained, is to "prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (quoting Fed. R. Civ. P. 17 advisory committee's note). *Advanced Magnetics* squarely holds that claims and choses in action "may be freely transferred or assigned to others," and that substitution of the real party in interest "relate[s] back to the date of the original complaint under the express terms of the Rule." *Id.* at 17, 20.

The Second Circuit's more recent decision in *Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370 (2d Cir. 2021), confirms and extends this principle. There, the Second Circuit held that "Article III is satisfied so long as a party with standing to prosecute the

specific claim in question exists at the time the pleading is filed," and that "[o]nly if the real party in interest either fails to materialize or lacks standing itself should the case be dismissed." *Id.* at 386–87. The court explained that an assignee is "the functional equivalent of the original plaintiff — an assignee 'step[s] into the shoes of the assignor.'" *Id.* at 386.

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l.*, 790 F.3d 411, 421 (2d Cir. 2015), reaffirms that "Rule 17(a)(3) prohibits a court from dismissing an action" for a real-party-in-interest defect "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." And *Klein ex rel. Qlik Techs. Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 226 (2d Cir. 2018), holds that Rule 17(a)(3) substitution is proper so long as it does not change the substance of the action and does not reflect bad faith or unfairness to the defendant.

Application here is direct and complete. The problem the R&R identifies — that a non-lawyer trustee cannot litigate the trust's claims — is quintessentially a real-party-in-interest problem. Rule 17(a)(3) requires that Boyce be afforded a reasonable time to cure that problem before dismissal. But this action does not even present a defect requiring cure: Boyce has already cured it. The November 26, 2025 assignment, executed *before* this action was filed on December 5, 2025, transferred full title to the claims to Boyce in his individual capacity. He is the real party in interest, and he has sued in his own name. There is nothing further for Rule 17(a)(3) to require, because the substitution has, in substance, already occurred.

The R&R dismisses Rule 17(a)(3) in a footnote, stating only that "[t]he Court's December 2025 Order rejected Plaintiff's reliance on Rule 17(a)(3) to override the rule against artificial entities assigning their claims to individuals." R&R at 16 n.3. But that is not an *analysis* of Rule 17(a)(3); it is a bare invocation of the prior order. And it treats Rule 17(a)(3) as if it were subordinate to a judge-made rule about entity representation — precisely reversing the correct hierarchy. Rule 17(a)(3) is a Federal Rule of Civil Procedure with the force of statute, adopted by the Supreme Court pursuant to the Rules Enabling Act. *See* 28 U.S.C. § 2072. The entity-representation rule, by contrast, is a judge-made prudential doctrine. To the extent the two conflict, Rule 17(a)(3)'s mandatory language controls.

## D. Sprint and Assignee Standing Confirm That Boyce Is the Real Party in Interest

The Supreme Court's decision in *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008), forecloses the argument that Boyce, as assignee, is not the real party in interest. In *Sprint*, the Court held that an assignee of a legal claim has Article III standing to sue on that claim, even where the assignee has agreed to remit any recovery to the assignor. *Id.* at 285–87. The Court reasoned that "[l]awsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Id.* at 285. *See also Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor.").

Here, Boyce holds a full assignment of legal title — not a mere collection right, not a bare power of attorney. Compare *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (denying standing to holder of mere power of attorney because "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim"). Under settled New York assignment law, that transfer vested Boyce with the right to sue on the claim in his own name. N.Y. Gen. Oblig. Law § 13-101 ("Any claim or demand can be transferred," subject only to narrow exceptions not applicable here).

### E. Jones and Bell Are Materially Distinguishable

The R&R rests its non-representation holding on *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983), and *Bell v. S. Bay European Corp.*, 486 F. Supp. 2d 257 (S.D.N.Y. 2007). Both cases are distinguishable in a way that is dispositive here: in each, the artificial entity remained a party to the litigation while the non-lawyer sought to represent it.

In *Jones*, the sole shareholder of a corporation attempted to litigate the corporation's claims *pro se* after an assignment. But the corporation itself remained the operative real party in interest; the court described the assignment as a "device[]" to permit an unauthorized appearance for a still-extant entity. 722 F.2d at 21–22. In *Bell*, the same fact pattern recurred: a nonlawyer sought to appear on behalf of a trust whose interests were still being litigated. 486 F. Supp. 2d at 259–60.

Neither case addressed — because neither case presented — the situation where the entity had *voluntarily and unconditionally dismissed itself* from all litigation and the individual

assignee was suing solely in his own name, in his own capacity, on his own fully-vested chose in action. That is the situation here. Zero Point exited the litigation on December 30, 2025, by voluntary dismissal under Rule 41(a)(1)(A)(i) — a dismissal the Magistrate Judge himself acknowledged was Zero Point's "absolute right." R&R at 7 n.2. There is no entity left to represent. Boyce is not appearing "for" Zero Point; Zero Point does not exist as a party.

The Supreme Court's discussion in *Rowland v. California Men's Colony*, 506 U.S. 194 (1993), confirms that the entity-representation rule targets representation *of an entity that is a party*. The Court noted that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Id.* at 201–02. But that rule addresses appearances "on behalf of" an entity; it does not, and cannot, prevent an individual with legal title to a chose in action from suing in his own name. *See also Lattanzio v. COMTA*, 481 F.3d 137, 139–40 (2d Cir. 2007) (rule applies to representation "on behalf of" an entity).

Even *Bischoff v. Waldorf*, 660 F. Supp. 2d 815 (E.D. Mich. 2009), a decision that could be read to support the R&R, is materially different: there, the individual purported to sue "on behalf of himself '&/or' Passport Pizza," a hybrid pleading that kept the corporation implicated in the case. Here, by contrast, (1) Zero Point is not named as a party in any capacity; (2) the November 26, 2025 assignment is a bona fide pre-suit assignment, not an ad-hoc pleading-stage device; and (3) Boyce sues exclusively in his own name.

### F. Guest v. Hansen Affirmatively Supports Boyce's Individual Prosecution

The Second Circuit's decision in *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), is the most relevant precedent and cuts strongly in Boyce's favor. In *Guest*, the court held that a sole beneficiary and administrator of an estate with no creditors may appear *pro se* on the estate's claims, because in that circumstance the entity is only a "legal fiction":

> It is only a legal fiction that assigns the sole beneficiary's claims to a paper entity — the estate — rather than the beneficiary himself. Accordingly, *pro se* representation is consistent with our jurisprudence both on the right to self-representation and on the prohibition of appearances by non-attorneys on behalf of others. Because the administrator is the only party affected by the disposition of the suit, he is, in fact, appearing solely on his own behalf.

*Id.* at 20. That reasoning maps directly onto Boyce's position. Zero Point's Amendment to the Declaration of Trust established that Boyce was the sole trustee and sole beneficiary. The November 26, 2025 individual-capacity assignment transferred title to the claims from that "legal fiction" to Boyce himself. When Boyce sues in his individual capacity as assignee, he is appearing "solely on his own behalf" — precisely as the *Guest* court described.

The R&R distinguished *Guest* in the November 2025 Order on the ground that "at the time [the Zero Point Action] was filed, there were beneficiaries of the Zero Point trust other than Boyce," and treated the trust amendment as impermissibly timed. R&R at 4. But whatever the merits of that timing objection in the Zero Point Action, it does not carry over to this action. This action was filed after Zero Point's exit, after the individual-capacity assignment, and by an individual plaintiff whose interest in the claims is undivided and personal. The *Guest* rationale is fully satisfied.

### G. The R&R's "Nullity" Concern Is Answered by Rule 17(a)(3)

The R&R articulates a policy concern that if the *Jones* rule "could be evaded by the simple expedient of the entity voluntarily dismissing its own suit, and an individual nonlawyer owner or trustee commencing a new action *pro se* in his or her own name as 'assignee,' the rule would be rendered a nullity." R&R at 17. This is a serious concern, and Plaintiff takes it seriously. But the answer is not to expand *Jones* beyond its holding. The answer is that Rule 17(a)(3), together with the assignment rules of New York law and the anti-champerty provisions of N.Y. Judiciary Law § 489, already provide the tools to police bad-faith or sham assignments.

The Rule 17 analysis asks whether the substitution "does not change the substance of the action and does not reflect bad faith or unfairness to the defendant." *Klein*, 906 F.3d at 226. New York's champerty statute, N.Y. Judiciary Law § 489, targets assignments made "for the very purpose" of litigation. *Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 166 (2016). And the standing analysis under *Sprint* and *W.R. Huff* asks whether the assignee holds legal title. Where an assignment is bona fide, transfers real title, and does not reflect bad faith or unfairness, none of those safeguards is triggered — and the *Jones* prophylactic rule need not be stretched to reach it.

Here, the assignment is not champertous: it is not an arm's-length purchase of a stranger's claim for profit, but an intra-relationship transfer from a trust to its sole beneficiary. It does not change the substance of the claims. It does not prejudice Chase, which has been fully on notice of the underlying dispute throughout. And Boyce holds full legal title. The Rule 41(b) "nullity" concern is answered — not by expanding *Jones*, but by applying the tools the Rules and New York law already provide.

## VIII. RULE 17 ANALYSIS — CONSOLIDATED

The core Rule 17 arguments are addressed above (Sections VII.C and VII.G). To consolidate:

1. *The text controls.* Rule 17(a)(3) states, in mandatory terms, that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). This language is not permissive; it is prohibitory.
2. *Second Circuit precedent applies the rule broadly. Advanced Magnetics*, 106 F.3d at 19–20, applies Rule 17(a)(3) to permit assignee substitution with relation-back. *Fund Liquidation Holdings*, 991 F.3d at 386–87, treats an assignee as "the functional equivalent of the original plaintiff." *Cortlandt St. Recovery*, 790 F.3d at 421, reiterates the mandatory language. *Klein*, 906 F.3d at 226, holds that substitution is proper absent bad faith or unfairness to the defendant.
3. *Boyce has already cured any defect.* The November 26, 2025 assignment predates the December 5, 2025 filing of this action. Boyce sues in his own name on his own fully-owned claim. There is nothing for Rule 17 to require.
4. *The R&R does not engage with Rule 17 substantively.* The R&R's only reference to Rule 17 is a footnote that dismisses it as already "rejected" in the December 2025 Order. R&R at 16 n.3. But the December 2025 Order dealt with an in-case substitution motion in the Zero Point Action; it did not, and could not, resolve the entirely different question of whether Rule 17(a)(3) prohibits Rule 41(b) dismissal in this new, separate action filed by the individual assignee.

## IX. STANDING ANALYSIS

Plaintiff does not object to the R&R's recommendation that Chase's Rule 12(b)(1) motion be denied. R&R at 18–20. On the contrary, Plaintiff asks the District Court to adopt that portion of the R&R.

The R&R's standing analysis is legally sound and consistent with controlling precedent. Chase's argument — that Boyce alleged no cognizable injury because Zero Point had no legally protected interest in obtaining a credit card — improperly conflates standing with the merits. As the Second Circuit held in *B.B. by Rosenthal v. Hochul*, 166 F.4th 259, 277 (2d Cir. 2026), "a plaintiff's standing does not depend on the eventual success of his legal theory." Instead, "for the purposes of the standing inquiry, a court must 'assume' that the plaintiffs 'are correct' on their legal theory." *Id.* at 278 (quoting *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023)).

Assuming the correctness of Plaintiff's legal theories, Boyce has plausibly alleged (i) an injury in fact (denial of the credit accommodation), (ii) traceable to Chase's conduct (the denial letter itself), and (iii) redressable by damages or specific performance. R&R at 19–20; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

This standing determination reinforces, rather than undermines, Plaintiff's Rule 17 argument: Boyce is the party who has suffered the injury the complaint alleges, and he is the party with the legal title to the assigned claims. He is, in every sense that matters, the real party in interest.

## X. ASSIGNMENT ANALYSIS

The November 26, 2025 assignment is a valid and enforceable transfer of the underlying claims from Zero Point to Boyce in his individual capacity.

### *A. Federal Law Recognizes Free Assignability of Choses in Action*

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 285–87 (2008), holds that assignees of legal claims have both standing and the right to sue in their own names. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000), reaffirms that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor."

### *B. New York Law Is Even More Explicit*

N.Y. Gen. Oblig. Law § 13-101 states: "Any claim or demand can be transferred, except in one of the following cases: 1. Where it is to recover damages for a personal injury; 2. Where it is founded upon a grant, which is made void by a statute of the state . . . ; 3. Where a transfer thereof is expressly forbidden by (a) a statute of the state, or (b) a statute of the United States, or (c) would contravene public policy." None of these narrow exceptions applies to a contract, UCC, unjust enrichment, or declaratory judgment claim against a national bank.

***C. Advanced Magnetics Confirms Second Circuit Adherence***

In *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997), the Second Circuit held that "claims or choses in action may be freely transferred or assigned to others," and that Rule 17(a) substitution of a proper party assignee "relate[s] back to the date of the original complaint under the express terms of th[e] Rule." *Id.* at 17, 20.

***D. The Assignee Steps into the Shoes of the Assignor***

As *Fund Liquidation Holdings* recently reaffirmed, an assignee is "the functional equivalent of the original plaintiff." 991 F.3d at 386.

The November 26, 2025 assignment satisfies each of these standards: it transfers "any and all claims" from the assignor to Boyce in his individual capacity, is dated and executed before the filing of this action, and reflects the parties' clear intent to transfer ownership. Chase does not contest the validity of the assignment as a matter of contract law. The assignment is effective.

## XI. CHAMPERTY ANALYSIS

Neither the R&R nor Chase's motion invoked New York's champerty statute, N.Y. Judiciary Law § 489, as a basis for dismissal. Plaintiff nonetheless addresses champerty briefly to foreclose any suggestion that the November 26, 2025 assignment could be recharacterized as champertous.

Section 489(1) prohibits any person from purchasing a claim or demand with the "intent and for the purpose of bringing an action or proceeding thereon." Section 489(2) provides a safe harbor for purchases exceeding $500,000 in aggregate consideration.

The New York Court of Appeals has adopted a "primary purpose" test: an assignment is champertous only where the "primary purpose" of the transfer was to bring suit. *Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 166 (2016); *Trust for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 199–202 (2009). Assignments that transfer beneficial ownership for legitimate reasons — including succession planning, restructuring, or simple consolidation of interests already held — fall outside the statute even if litigation was contemplated.

The November 26, 2025 assignment is not champertous. It is not an arm's-length purchase from a stranger. It is an intra-relationship transfer from a trust to its sole trustee and sole beneficiary — precisely the kind of consolidation of interests that *Justinian Capital*'s primary-purpose test recognizes as legitimate. Section 489 is designed to prevent predatory claim-trafficking by strangers; it has no application to a beneficial-owner-to-individual assignment made to align formal title with existing beneficial ownership.

## XII. RULE 12(b)(6) ANALYSIS

Plaintiff addresses the R&R's alternative Rule 12(b)(6) recommendations candidly. Some of the R&R's substantive criticisms have force; others are curable through amendment; and none warrants dismissal with prejudice under the settled standards governing *pro se* pleadings.

### A. Governing Standards

To survive a motion under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the court "must accept as true all of the allegations contained in a complaint" and "draw all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

*Pro se* complaints are subject to a "less stringent standard" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Courts must "read the pleadings of a *pro se* plaintiff liberally" and construe them to raise "the strongest possible arguments that they suggest." *McPherson v.*

*Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). The R&R correctly identifies these standards (R&R at 12–13); it does not, however, consistently apply them.

## B. Breach of Contract

The R&R concludes that Boyce failed to plead an enforceable contract because Chase never accepted the credit application. R&R at 20–22. Plaintiff acknowledges that this is the most challenging of the four claims. The Second Circuit has held that "an application to [a lender's] loan modification program does not create a binding agreement," *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 533 (E.D.N.Y. 2015), and Plaintiff does not press a contrary rule.

That said, the R&R's analysis leaves gaps that could be addressed on amendment. The Complaint alleges that Chase failed to respond to a Reconsideration Request and to further communications after the initial denial. Compl. ¶¶ 12–13. Depending on the specific representations Chase made in the course of the credit accommodation process — and depending on whether the Reconsideration Request created a distinct commercial relationship or triggered specific procedural obligations under Chase's own published terms — a viable implied-contract, unilateral-contract, or promissory estoppel theory may exist. That theory has not been fully developed in the current pleading because Plaintiff is *pro se*. Under *McPherson* and *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000), the appropriate remedy is leave to amend, not dismissal with prejudice.

## C. Wrongful Dishonor

The R&R correctly identifies that UCC Articles 3, 4, and 5 do not apply on their face to a denied credit card application. R&R at 22–25. Plaintiff acknowledges this. A credit card application is not a "commercial paper" under Article 3, an "item" for payment of money under Article 4, or a "letter of credit" under Article 5.

However, *Erickson v. Pardus* requires the district court to construe the *pro se* complaint liberally and to give effect to any viable theory the facts support. 551 U.S. at 94. Even if UCC labels do not apply, the underlying factual allegation — that Chase failed to acknowledge, process, or respond to a formal Reconsideration Request and related communications — may

support a narrower theory sounding in bad faith or breach of implied covenants attached to the credit accommodation process. Leave to amend to develop that theory is warranted.

### D. Unjust Enrichment

The R&R faults the unjust enrichment allegation as conclusory and unsupported by facts explaining "how Chase might have benefitted from those materials." R&R at 25. This is a fair criticism of the current pleading. But *pro se* plaintiffs are entitled to attempt to cure such deficiencies. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000), and *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516–17 (2012), require the pleading to identify a specific and direct benefit at plaintiff's expense; the Complaint may be amended to allege with more particularity the informational or reputational benefits Chase received (including, potentially, the credit file inquiry and internal use of the tendered documentation) and the corresponding harm to Plaintiff. Dismissal with prejudice, without a single opportunity to replead, is inconsistent with settled *pro se* practice.

### E. Declaratory Judgment

The R&R dismisses the declaratory judgment claim as duplicative. R&R at 26–27. Ordinarily, that would be correct. But a declaratory judgment claim can survive independent of a companion damages claim where it seeks a distinct declaration of rights and obligations with independent legal effect. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384 (2d Cir. 2005). If the district court dismisses the underlying substantive claims, Plaintiff acknowledges that the declaratory claim likely falls with them. But if the underlying account or credit accommodation relationship remains genuinely disputed on amendment, a targeted declaratory judgment claim addressing the parties' respective rights and obligations may retain independent utility.

## XIII. DISCUSSION OF EACH CAUSE OF ACTION — SUMMARY

To ensure clarity, Plaintiff summarizes his position on each cause of action:

| Cause of Action | R&R Recommendation | Plaintiff's Position |
|---|---|---|
| Breach of Contract | Dismiss with prejudice | Not reached if procedural issue resolved in Plaintiff's favor; if |

| | | |
|---|---|---|
| | | reached, leave to amend to develop alternative contract theories. |
| Wrongful Dishonor | Dismiss with prejudice | Acknowledge UCC labels inapposite; leave to amend to preserve theory sounding in wrongful refusal. |
| Unjust Enrichment | Dismiss with prejudice | Leave to amend to allege specific and direct benefit at Plaintiff's expense. |
| Declaratory Judgment | Dismiss as duplicative | Rises or falls with underlying substantive claims on amendment. |

At every step, Plaintiff's position is that the Rule 41(b) / Rule 17(a)(3) issue is dispositive and should be resolved first. If the district court agrees that Boyce is properly before it as the real party in interest, the merits of the 12(b)(6) recommendations can be addressed either on a renewed motion after amendment or on the merits with the benefit of a properly-pleaded amended complaint.

## XIV. LEAVE TO AMEND

The R&R recommends that leave to amend be denied. R&R at 27–28. That recommendation is inconsistent with the Second Circuit's settled policy for *pro se* plaintiffs.

"A *pro se* complaint should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *see also Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000); *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Leave to amend should be freely granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The R&R relies on *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), for the proposition that leave to amend may be denied where the problem is "substantive; better pleading will not cure it." R&R at 27–28. But *Cuoco* is materially different: there, the plaintiff pursued a legally nonexistent theory (a *Bivens*-style claim for a course of medical treatment).

Here, none of Plaintiff's claims is "legally nonexistent." Breach of contract, wrongful dishonor, unjust enrichment, and declaratory relief are all recognized causes of action. The question is not whether the theories exist but whether they have been adequately pleaded. That question is properly resolved by permitting amendment, not by dismissing with prejudice.

Moreover, Plaintiff's principal problem is procedural — the real-party-in-interest / representation issue addressed by Rule 17(a)(3) — which is by definition curable through the very mechanisms Rule 17(a)(3) prescribes. Denying leave to amend in these circumstances defeats both the Second Circuit's liberal amendment policy for *pro se* plaintiffs and the mandatory "reasonable time to cure" default of Rule 17(a)(3).

At a minimum, if the District Court is inclined to accept any portion of the R&R's Rule 12(b)(6) analysis, it should reject the "futility" finding and grant leave to amend at least once.

## XV. REQUEST FOR REJECTION OF THE REPORT (IN PART) AND ADOPTION (IN PART)

Plaintiff respectfully requests that the District Court:

1. **Adopt** the R&R's recommendation to deny Chase's motion to dismiss under Rule 12(b)(1) for lack of Article III standing (R&R at 18–20);

2. **Reject** the R&R's recommendation to dismiss under Rule 41(b) (R&R at 13–18), because (a) the concern the R&R identifies is a real-party-in-interest problem governed by the mandatory "reasonable time to cure" requirement of Rule 17(a)(3), (b) Boyce has already cured any defect through the November 26, 2025 individual-capacity assignment, (c) *Jones* and *Bell* are materially distinguishable because the artificial entity has exited this litigation entirely, (d) *Guest v. Hansen* affirmatively supports Boyce's individual prosecution, and (e) the five-factor Rule 41(b) analysis is superficial and fails to establish concrete prejudice or the necessary consideration of lesser sanctions;

3. **Reject** the R&R's recommendation to dismiss under Rule 12(b)(6) with prejudice (R&R at 20–27), and instead **grant leave to amend** at least once, consistent with *Branum*, *Cruz*, *Nielsen*, and *Loreley*.

## XVI. CONCLUSION

Federal Rule of Civil Procedure 17(a)(3) exists precisely to prevent the outcome the R&R recommends: dismissal on real-party-in-interest grounds without a reasonable opportunity to cure. Here, Boyce has not merely had that opportunity — he has already used it, by obtaining a bona fide November 26, 2025 assignment of full legal title in his individual capacity before filing this action. The R&R's expansion of *Jones v. Niagara Frontier* to a factual context *Jones* did not present — an individual plaintiff suing on his own fully-owned chose in action after the entity has completely exited the litigation — is inconsistent with the Second Circuit's own reasoning in *Guest v. Hansen* and with the mandatory language of Rule 17(a)(3). At the same time, Rule 41(b)'s designation as the "harshest of sanctions," reserved for "extreme situations," cannot be reconciled with its application here, where no dilatory prosecution has occurred in this action, no concrete prejudice to Chase has been shown, and no meaningful consideration of the mandatory less-drastic Rule 17(a)(3) alternative appears in the R&R.

For the foregoing reasons, Plaintiff respectfully requests that the District Court adopt the R&R's Rule 12(b)(1) recommendation, reject the R&R's Rule 41(b) and Rule 12(b)(6) recommendations, and either (a) deny Chase's motion to dismiss in its entirety or, in the alternative, (b) grant Plaintiff leave to amend the Complaint within thirty (30) days of the Court's order.

Dated: July 31st, 2026

New York, New York

Respectfully submitted,



**MALCOLM BLAIR BOYCE**

*Plaintiff, pro se*
350 Canal Street
Suite 194
New York NY, 10013

## CERTIFICATE OF SERVICE

I hereby certify that on July 31st, 2026, I caused the foregoing Plaintiff's Objections to the Report and Recommendation to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record for Defendant JPMorgan Chase Bank, N.A.

Malcolm Blair Boyce