**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MALCOLM BLAIR BOYCE,

Plaintiff,

-against-

JP MORGAN CHASE BANK, N.A.,

Defendant.

MEMORANDUM DECISION AND ORDER

25 Civ. 10131 (GBD) (GS)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Malcolm Blair Boyce ("Plaintiff"), proceeding *pro se*, brings this action against Defendant JP Morgan Chase Bank, N.A. ("Chase"), seeking relief after Chase denied a credit card application. Before this Court is Magistrate Judge Gary Stein's July 17, 2026, Report and Recommendation (the "Report") recommending that this Court grant Chase's motion to dismiss Plaintiff's claims with prejudice. (R. & R., ECF No. 33.) After a careful review of the Report and the parties' submissions, this Court ADOPTS the Report recommending dismissal of plaintiff's action.

## I. BACKGROUND

Plaintiff alleges that on or around April 19, 2025, in his capacity as the trustee of Zero Point MGMT ("Zero Point"), he "submitted a credit application seeking a $250,000 credit accommodation." (Compl., ECF No. 1, ¶ 8.) This application was filed in Zero Point's name. (*Zero Point MGMT. v. Chase Bank/JP Morgan Chase Co.*, No. 25-CV-8413 (GBD) (GS) (S.D.N.Y. Oct. 10, 2025) (the "Zero Point Action"), ECF No. 1-1 ¶ 5.) As part of the application, Plaintiff included an "Affidavit of Trust Credit Tender and Security Interest," a "Trust Collateral Addendum," and other "supporting fiduciary documentation." (Compl. ¶ 9.)

According to Plaintiff, Chase "failed to address the tender, failed to provide a substantive response, and issued . . . a blanket denial citing an unsupported 'entity type' restriction." (*Id.* ¶ 11.) Plaintiff then sent Chase a "Reconsideration Request, a Notice of Fault and Opportunity to Cure, and an Affidavit of Final Dishonor and Enforcement." (*Id.* ¶ 12.) Plaintiff claims that Chase "took no action to resolve" his grievances "or perform on the obligations owed," (*Id.* ¶ 13,) despite Chase allegedly "retaining the benefit of Plaintiff's disclosures and tender," (*Id.* ¶ 14.)

On September 21, 2025, Plaintiff commenced an action in New York Supreme Court against Chase on behalf of Zero Point. (Zero Point Action, ECF No. 1 ¶ 1.) The allegations in the Zero Point Action were nearly identical to this case. (*See* Zero Point Action, ECF No. 1-1 ¶¶ 5–13.) On October 10, 2025, Chase removed the case to this Court. (Zero Point Action, ECF No. 1.) No attorney appeared for Zero Point while the case was before the state court or following removal. Rather, Zero Point intended to proceed *pro se*, with Plaintiff litigating the dispute on Zero Point's behalf. (*See* Zero Point Action, ECF No. 1 ¶ 6.)

After Chase raised the issue that Plaintiff, as a nonlawyer trustee, was not permitted to represent Zero Point in federal court, (Zero Point Action, ECF No. 7,) Plaintiff notified this Court that Zero Point had assigned the claims at issue to Plaintiff in his fiduciary capacity as trustee, (Zero Point Action, ECF No. 8.) Plaintiff also submitted a letter attaching an Amendment to the Declaration of the Trust, dated October 11, 2025, indicating that Plaintiff was "the sole trustee and sole beneficiary of Zero Point MGMT." (Zero Point Action, ECF No. 16, at 3, 18.) On October 21, 2025, this Court referred the issue to Magistrate Judge Stein.

On November 24, 2025, Magistrate Judge Stein issued an Opinion & Order which held that Zero Point, as an artificial entity, could not appear *pro se* in federal court. (Zero Point Action, ECF No. 20, at 3 (citing *Bell v. S. Bay Eur. Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007).)

The November 2025 Order further found that the Zero Point's assignment of its claims to Plaintiff and the amendment to the Declaration of Trust were strategic attempts to circumvent this rule, which Magistrate Judge Stein concluded were "equally impermissible." (*See id.* at 4–5, 9–10.) Magistrate Judge Stein gave Zero Point approximately 45 days, until January 9, 2026, to seek representation in the action. (*Id.* at 11–12.) The November 2025 Order stated that if no appearance was filed by that date, Chase could then file a motion to dismiss for failure to prosecute. (*Id.* at 12.)

Instead of seeking counsel, Plaintiff moved to substitute himself in Zero Point's place. (Zero Point Action, ECF No. 22.) Plaintiff's motion included a second assignment of Zero Point's claim to Plaintiff, this time in his individual capacity. (*Id.* at 2.) On December 5, 2025, Magistrate Judge Stein denied Plaintiff's motion to substitute, explaining that it "does not matter whether Zero Point assigns the claim to [Plaintiff] in his individual capacity or in his fiduciary capacity," as either assignment is "an attempt to circumvent the bar on a non-lawyer's representation of a trust by assigning the trust's cause of action to himself." (Zero Point Action, ECF No. 25, at 2 (citation omitted).) The December 2025 Order reiterated that Zero Point was required to retain counsel by January 9, 2026, "or risk dismissal of its claims." (*Id.* at 4.)

Later that day, after the Magistrate Court published its decision denying Zero Point's motion to substitute, Plaintiff initiated this action. The allegations and asserted claims for relief in the instant action are nearly identical to those in the Zero Point Action. The instant action was subsequently transferred to this Court as related, (Dkt. Entry dated Dec. 16, 2025,) and referred to Magistrate Judge Stein for general pretrial supervision. (ECF No. 11.) On December 30, 2025, Plaintiff submitted a notice of voluntary dismissal of the Zero Point Action, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Zero Point Action, ECF No. 30.)

After Plaintiff discontinued the Zero Point Action, Magistrate Judge Stein granted Chase leave to file a motion to dismiss the instant action. (ECF No. 22.) On February 27, 2026, Chase filed its motion to dismiss, (ECF No. 25,) and accompanying memorandum of law, (ECF No. 26.) On June 17, 2026, this Court referred this motion to Magistrate Judge Stein for a Report and Recommendation. (ECF No. 31.) On July 17, 2026, Magistrate Judge Stein issued his Report. (ECF No. 33.) Plaintiff filed his objections to the report on July 31, 2026, (Objs., ECF No. 34,) to which Chase responded on August 14, 2026, (ECF No. 35.)

## II. LEGAL STANDARDS

### A. Reports and Recommendations

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C § 636(b)(1)(C). "When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025). However, the district court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Instead, it is sufficient that the district court "arrive at its own, independent conclusion." *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of the magistrate judge's report to which no objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006). Clear error is present when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *See United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation and internal quotation marks omitted).

### B. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citing *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir 2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims merely "consistent" with liability are insufficient, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 557.

## III. THE RECOMMENDATION TO DISMISS PLAINTIFF'S CLAIMS IS ADOPTED

The Report recommends that this Court (1) dismiss the complaint pursuant to Rule 41(b); (2) in the alternative, dismiss the complaint for failure to state a claim for relief under Rule 12(b)(6); and (3) deny Plaintiff leave to amend the complaint.

Plaintiff objects to the Report's recommendations to dismiss the complaint pursuant to Rule 41(b) and deny Plaintiff leave to amend. (*See id.* at 8–15, 21–23.) This Court reviews these conclusions *de novo*.

### A. Dismissal is Warranted Under Rule 41(b)

Under Federal Rule of Civil Procedure 41(b) ("Rule 41(b)"), a court may dismiss an action "if the plaintiff fails to prosecute or to comply with [the] rules or a court order." Fed. R. Civ. P. 41(b). "Such a dismissal is a 'harsh remedy,' however, and is reserved for 'extreme situations.'" *United States ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 163 (2d Cir. 2023) (quoting *Minnette v.*

*Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)). Courts assessing whether dismissal under Rule 41(b) is appropriate consider whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). "As no one factor is dispositive, courts need only provide an explanation for the dismissal rather than consider each factor." *Wellsville Manor LLC v. Great Am. Ins. Co.*, No. 22-CV-1229 (MKB), 2025 WL 2173642, at *3 (E.D.N.Y. July 31, 2025) (internal quotation marks and citation omitted).

"It is black letter law that corporations, partnerships, limited liability companies, associations, and all other artificial entities must be represented by counsel and may not appear pro se in federal court." *RGI Brands LLC v. Cognac Brisset-Aurige, S.a.r.l.*, No. 12 Civ. 1369 (LGS) (AJP), 2013 WL 1668206, at *4 (S.D.N.Y. Apr. 18, 2013), *R. & R. adopted*, 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013); *see also Bell*, 486 F. Supp. 2d at 259. Courts routinely dismiss actions under Rule 41(b) when, as in the Zero Point Action, an artificial entity is ordered to retain counsel and fails to do so. (*See* R. & R. at 15 (collecting cases).) Further, a litigant may not attempt to circumvent this bar by assigning an artificial entity's cause of action to himself. *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983).

Here, the Report recommends that this Court dismiss Plaintiff's claims because Plaintiff failed to retain counsel in the Zero Point Action. (*See* R. & R. 13–18.) Relying on *Jones*, the Report concluded that Plaintiff's decision to voluntarily dismiss the Zero Point Action and commence this action in his own name was simply "another impermissible attempt to circumvent the . . . rule forbidding an artificial entity from assigning its claims to a lay person in order for the

lay person to prosecute those claims." (R. & R. at 16–17.) Plaintiff contends that this conclusion improperly conflates the Zero Point Action and this case. He argues that Zero Point "voluntarily and unconditionally dismissed itself from all litigation" and that he was now "suing solely in his own name, in his own capacity, on his own fully-vested chose in [sic] action." (Objs. at 12–13.)

This Court agrees with the Report's conclusions. The instant action was only initiated after Magistrate Judge Stein ordered Plaintiff to retain counsel for Zero Point. The claims asserted in this case—which stem from a rejected credit card application for Zero Point—are identical to the claims in the Zero Point Action. Accordingly, "there is no functional difference between [Plaintiff's] prior motion to substitute himself as the plaintiff in the Zero Point Action" and his current attempt to assert those same claims here in his own name. (R. & R. at 16.) If allowed, Plaintiff's procedural tactic—having the artificial entity voluntarily dismiss its own action so a nonlawyer can commence a new action *pro se* as an assignee of the claims—would render the long-held principal that artificial entities cannot represent themselves *pro se* a nullity. (*See* R. & R. at 17.)

Analyzing the five *Drake* factors yields the same conclusion. The first two factors weigh in favor of dismissal due to the connection between this action and the Zero Point Action. Plaintiff argues that his refusal to retain counsel occurred in the Zero Point Action, and there has been no prejudicial delay in this case. (Objs. at 9.) But as explained above, each of Plaintiff's procedural maneuvers, in both cases, have been calculated to allow him, a nonlawyer, to prosecute Zero Point's claims. This Court will not blind itself to this reality by viewing these two actions in isolation. Plaintiff has been aware that Zero Point must be represented by counsel since at least October 10, 2025. (Zero Point Action, ECF No. 1.) On numerous occasions, Magistrate Judge Stein warned Plaintiff that failure to retain counsel would result in dismissal. (See Zero Point

Action, ECF Nos. 20, 25.) Plaintiff therefore had ample opportunity to retain counsel and understood that failure to do so would result in dismissal.

The third factor also weighs in favor of dismissal. Due to Plaintiff's failure to retain counsel, Chase has had to defend against the exact same claims in two separate actions for nearly a year. The tangled procedural history of these two actions clearly demonstrates the "unusual burdens" that accompany nonlawyer representation of an artificial entity. *Jones*, 722 F.2d at 22.

The same is true for factors four and five. Plaintiff's repeated failure to follow court orders and refusal to hire counsel to prosecute these claims has led to two separate actions asserting identical claims. The need to alleviate court calendar congestion thus outweighs Plaintiff's right to continue to be heard on these issues. Moreover, given Plaintiff's decision to disregard the Court's orders to hire counsel, and his repeated attempts to circumvent those orders, "no lesser sanction than dismissal would effectively address his failure to prosecute." *Garcia v. Thomas*, No. 21-CV-636 (GBD) (BCM), 2023 WL 3354757, at *4 (S.D.N.Y. Apr. 25, 2023), *report and recommendation adopted*, 2023 WL 3346789 (S.D.N.Y. May 10, 2023).

Plaintiff's main argument against dismissal under Rule 41(b) is that Magistrate Judge Stein failed to consider the lesser sanction of substitution under Rule 17(a)(3). According to Plaintiff, Rule 17(a)(3) requires this Court to afford Plaintiff a reasonable opportunity to cure what he describes as a "real-party-in-interest problem." (*See* Objs. at 10–11.) But Magistrate Judge Stein previously considered and rejected this argument. In his December 5 Order, Magistrate Judge Stein explained that Rule 17 is inapplicable here because "it is well settled that Rule 17(a)'s real party in interest requirement only applies at the commencement of the lawsuit." (Zero Point Action, ECF No. 25, at 3 (quoting *Kumaran v. Nat'l Futures Ass'n*, 604 F. Supp. 3d 82, 87

(S.D.N.Y. 2022)).) Because that time has long since passed, Rule 17(a)(3) does not apply and cannot be considered a lesser sanction that would influence the Rule 41(b) analysis.

Plaintiff also argues that dismissal under Rule 41(b) is inappropriate because he is eligible to represent Zero Point *pro se* pursuant to *Guest v. Hansen*, 603 F.3d 15, 20–21 (2d Cir. 2010). In *Guest*, the Second Circuit held that "the administrator and sole beneficiary of an estate with no creditors may appear *pro se* on behalf of the estate." *Id.* at 21. This narrow exception does not apply here. As noted in the Report, Magistrate Judge Stein previously found that "at the time the Zero Point Action was filed, there were beneficiaries of the Zero Point [T]rust other than [Plaintiff]." (R. & R. at 4.) Magistrate Judge Stein also "found it apparent that [Plaintiff] amended the Declaration of Trust to remove those beneficiaries in order to facilitate his *pro se* representation of Zero Point." (*Id.* at 5.) Plaintiff has therefore not established that he "is the only party affected by the disposition of the suit." *Guest*, 603 F.3d at 21. Plaintiff also has not shown that Zero Point has no creditors, a separate requirement for the *Guest* exception to apply.

In short, dismissal is appropriate under Rule 41(b). If this Court were to grace Plaintiff's tactic, it "would be allowing him to flout a well-established and purposeful public policy by means of a procedural device." *See Jones*, 722 F.2d at 23 (quoting *Mercu-Ray Industries, Inc. v. Bristol-Myers Co.*, 392 F.Supp. 16, 20 (S.D.N.Y. 1974). This Court therefore adopts the Report's recommendation and dismisses Plaintiff's claims pursuant to Rule 41(b).

**B. The Complaint Fails to State a Claim for Relief**

In the alternative, the Report recommends that this Court dismiss the Plaintiff's four causes of action—breach of contract, wrongful dishonor, unjust enrichment, and declaratory judgment—for failure to state a claim for relief under Rule 12(b)(6). (*See* R. & R. at 20–27.) As Plaintiff does not object to these conclusions, (*see* Objs. at 20–21,) this Court reviews them for clear error.

1. *Breach of Contract*

The Report concluded that Plaintiff's breach of contract claim failed because Plaintiff "has not sufficiently alleged a contractual relationship with Chase by virtue of the credit card application." (R. & R. at 21.) To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). A credit card application, without more, is insufficient to establish an enforceable contractual relationship, express or implied. *See Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*, No. 23-CV-2349 (JGLC), 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023) (finding there was no implied contract where plaintiff merely alleged the existence of "[a] loan application and discussions with a lender about the requirements necessary to obtain that loan"); *Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062 (PKC) (ST), 2018 WL 8369422, at *11 (E.D.N.Y. Aug. 10, 2018) ("Applications for loans thus do not create binding agreements."), *report and recommendation adopted*, 2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019), *aff'd*, 811 F. App'x 27 (2d Cir. 2020). Here, Plaintiff has failed to allege any facts suggesting that Chase intended to be bound by the application or that "the mere submission of a credit card application guarantees the applicant's right to receive one." (*See* R. & R. at 20–21.) Accordingly, the Report's conclusion that Plaintiff failed "to establish the existence of a valid contractual relationship" was not in clear error.

2. *Wrongful Dishonor*

Plaintiff's wrongful dishonor claim also fails. The Report correctly concluded that Plaintiff cannot base a wrongful dishonor claim under the New York U.C.C. on a denied credit card application. A denied credit card application does not fit within any of the New York U.C.C.'s

wrongful dishonor causes of action— it is not "commercial paper" under U.C.C. Article 3, (*see id.* at 23,) "an instrument for the payment of money" under U.C.C. Article 4, (*id.* at 23–24,) or a "letter of credit" under U.C.C. Article 5, (*id.* at 24.) Plaintiff concedes as much, acknowledging that "UCC Articles 3, 4 and 5 do not apply on their face to a denied credit card application." (Objs. at 19.) Accordingly, this Court sees no clear error in this conclusion and adopts the Report's recommendation to dismiss Plaintiff's wrongful dishonor claim.

*3. Unjust Enrichment*

The Report recommends dismissing Plaintiff's unjust enrichment claim because "Plaintiff has pled only a bare legal conclusion that Chase was unjustly enriched." (R. & R. at 26.) "An unjust-enrichment claim under New York law requires the plaintiff to show 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Delshah 60 Ninth, LLC v. Free People of PA LLC*, 175 F.4th 192, 200 (2d Cir. 2026) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)). Here, Plaintiff alleges that Chase "retain[ed] the benefit of Plaintiff's disclosures and tender," (Compl. ¶ 14,) and that Chase's retention of those benefits, while refusing to perform, "constitutes unjust enrichment," (*id.* ¶ 25.) Plaintiff, however, does not explain how this alleged retention enriched or otherwise benefitted Chase. These general allegations are insufficient to state a claim for unjust enrichment. *See e.g.*, *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016) (dismissing unjust enrichment claim where party failed to adequately plead enrichment). This Court therefore adopts the Report's recommendation and dismisses Plaintiff's unjust enrichment claim.

*4. Declaratory Judgment*

Finally, the Report recommends dismissing Plaintiff's declaratory judgment claim as duplicative of Plaintiff's substantive claims. "Courts generally reject a [declaratory judgment]

claim when other claims in the suit will resolve the same issues." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018); *see also CVS Albany, LLC v. 1688 Rojav Realty, LLC*, No. 24-CV-07145-LTS, 2025 WL 2614077, at *3 (S.D.N.Y. Sept. 10, 2025) ("[W]hen a declaratory judgment claim seeks a declaration of the same rights as will be determined under [a plaintiff's] action for breach of contract, it is duplicative and may be dismissed." (internal quotation marks and citation omitted)). Plaintiff acknowledges that "[i]f the district court dismisses the underlying substantive claims, . . . the declaratory claim likely falls with them." (Objs. at 20.) Because Plaintiff's declaratory judgment claim seeks the same relief as his other causes of action, all of which this Court dismisses, the declaratory claim also fails.

**C. Leave to Amend is Denied**

The Magistrate Judge *sua sponte* denied Plaintiff leave to replead. (R. & R. at 27–28.) District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its deficiencies "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen*, 746 F.3d at 62 (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010)). But "[w]here a proposed amendment would be futile, leave to amend need not be given." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Plaintiff objects, arguing that this Court should grant him leave to amend to allege more specific facts and "develop alternative contract theories." (Objs. at 20–22.) Plaintiff, however, has made only vague references to potential curative facts. There is no indication that Plaintiff is aware of facts that would allow him to plead a plausible claim against Chase. "Repleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, Plaintiff is denied leave to replead. *See Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).

## IV. CONCLUSION

Magistrate Judge Stein's Report is ADOPTED, and Chase's motion to dismiss, (ECF No. 25), is GRANTED. Plaintiff's Complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close the motion and the case accordingly.

Dated: September 22, 2026
New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge